501 So.2d 54 (1987)
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant/Cross Appellee,
v.
Jack WELSH and Kay Welsh, and Lucy Bustillo and Angela Bustillo, Appellees/Cross Appellants.
No. 85-1117.
District Court of Appeal of Florida, Fourth District.
January 7, 1987.
*55 Gene Kubicki of Talburt, Kubicki & Bradley, Miami, Richard A. Sherman, Fort Lauderdale; and Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, for appellant/cross appellee.
Cone Wagner Nugent Johnson Roth and Romano, P.A., and Larry Klein of Klein & Beranek, P.A., West Palm Beach, for appellees/cross appellants-Welsh.
Reid & Ricca, P.A., and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellees/cross appellants-Bustillo.
GUNTHER, Judge.
St. Paul Fire and Marine Insurance Company (St. Paul) appeals a judgment entered in a bad faith action after a jury verdict in favor of its insureds, Jack and Kay Welsh, and a final judgment awarding attorney's fees in the amount of $425,000 in favor of the Welshes.
Angela Bustillo rented an apartment from Jack and Kay Welsh (Welshes) in Riviera Beach, Florida. On October 8, 1980, Lucy Bustillo, Angela's seventeen-year-old daughter, fell off a second story porch over the carport of the apartment and seriously injured herself. The record reveals that Lucy will probably suffer from a condition of permanent paraplegia as a result of this accident.
The Bustillos filed a lawsuit against the Welshes essentially alleging that the Welshes were liable for Lucy's injuries because of the defective condition of the premises. St. Paul, the Welshes' liability carrier, took over the Welshes' defense. The Bustillos' lawsuit ultimately resulted in a jury verdict in favor of the Bustillos in the amount of $3,789,898, which was substantially in excess of the Welshes' insurance policy liability limits of $300,000. Subsequently, the Welshes then brought an action against St. Paul on the theory that St. Paul acted in bad faith in handling the Bustillos' claim and in refusing to settle for the policy limits in a timely manner. The Bustillos intervened in this second action to protect their interests. This second case was tried and the jury returned a verdict in favor of the Welshes in the amount of $3,789,898. Accordingly, the trial court entered judgment, which led to the present appeal.
St. Paul argues that the trial court committed reversible error where it granted six peremptory challenges to the plaintiffs and three to the intervenors while only allowing three peremptory challenges to the defendant. St. Paul properly preserved this issue for appeal by appropriate objections at trial, by exhausting its alloted peremptory challenges, and by requesting the trial court to grant it a fourth peremptory challenge, which was denied.
*56 We agree with St. Paul that the trial court improperly granted six peremptory challenges to the Welshes. Florida Rule of Civil Procedure 1.431(d) provides, in part:
(d) Peremptory Challenges. Each party is entitled to three peremptory challenges of jurors, but when the number of parties on opposite sides is unequal, the opposing parties are entitled to the same aggregate number of peremptory challenges to be determined on the basis of three peremptory challenges to each party on the side with the greater number of parties... .
According to this rule the plaintiffs and defendant should have had at least an equal number of challenges.
In the instant case, the application of the above rule is complicated by the cross-claim filed by St. Paul against the Bustillos. Even though the cross-claim to enforce settlement alleges the Bustillos accepted the policy limits offered by St. Paul prior to the first jury trial, this cross-claim does not create a situation that entitles the Bustillos to a number of challenges greater than either the Welshes or St. Paul. The Welshes' and Bustillos' interests in the instant case are actually more aligned than they are adverse. Both the Welshes and the Bustillos want St. Paul to be responsible for paying the entire judgment including that amount in excess of the Welshes' policy limits. Therefore, the trial court erred in granting the Welshes and the Bustillos a total of nine challenges while granting only three peremptory challenges to St. Paul. See Funland Park, Inc. v. Dozier, 151 So.2d 460 (Fla. 3d DCA), cert. discharged, 157 So.2d 815 (Fla. 1963).
Furthermore, this error in allotting peremptory challenges is grounds for reversal. The Florida Supreme Court has recently stated that "[t]he right to the unfettered exercise of peremptory challenges ... is an essential component of the right to trial by jury, a right that `is fundamental to the American scheme of justice.'" Tedder v. Video Electronics, 491 So.2d 533 (Fla. 1986) (quoting Grant v. State, 429 So.2d 758, 760-61 (Fla. 4th DCA), review denied, 440 So.2d 352 (Fla. 1983)); Funland Park v. Dozier, 151 So.2d 460 (Fla. 3d DCA), cert. discharged, 157 So.2d 815 (Fla. 1963). In Dobek v. Ans, 475 So.2d 1266 (Fla. 4th DCA 1985), review denied, 488 So.2d 829 (Fla. 1986), this court found that the denial of a party's request to exercise a peremptory challenge was reversible error. This court rejected the contention that such error would at most be harmless, citing the Third District's opinion in Saborit v. Deliford, 312 So.2d 795 (Fla. 3d DCA 1975), cert. denied, 327 So.2d 32 (Fla. 1976), wherein that court held that refusal to permit exercise of a peremptory challenge "cannot be said to have been a harmless error, where the panel that was then sworn decided the case adversely to the plaintiffs. Denial to a litigant of peremptory challenges to which he is entitled constitutes reversible error." Saborit, 312 So.2d at 798. The Saborit court also cited with approval Carames v. Golden, 445 So.2d 1140 (Fla. 3d DCA 1984), for the proposition that refusal to permit a party to exercise a peremptory challenge is reversible error.
In the instant case, the record reveals that the trial court's error prejudiced St. Paul, because St. Paul unsuccessfully sought to exercise a fourth peremptory challenge after it had exhausted its three allotted challenges. See Upchurch v. Barns, 197 So.2d 26 (Fla. 4th DCA 1967). Therefore, we conclude that the trial court committed reversible error when it granted only three peremptory challenges to St. Paul, and, thus, this judgment must be reversed, and the cause remanded for a new trial.
In an attempt to assist the trial court in the re-trial of this matter, we will address several other points on appeal.
We disagree with St. Paul's contention that it was deprived of a fair trial by the admission into evidence of highly prejudical letters written to it by Hannah, St. Paul's consulting attorney. At the request of St. Paul, Hannah had reviewed and analyzed the Bustillo claim file and *57 then wrote to St. Paul advising it of his opinion concerning the handling of the case. These Hannah letters became a part of the Bustillo claim file and contained a very candid and critical appraisal of St. Paul's conduct surrounding the processing of the Bustillos' claim. When the Welshes moved to produce St. Paul's claim file in the instant case, St. Paul objected to producing the claim file only on the ground of relevancy. St. Paul's motion for protective order neither mentioned the Hannah letters nor raised any specific objection to producing them such as attorney-client privilege or work product. Since St. Paul did not assert these privileges before producing the letters, once St. Paul produced the letters, the privileges were waived. See § 90.507, Fla. Stat., Hamilton v. Hamilton Steel Corporation, 409 So.2d 1111 (Fla. 4th DCA 1982). Furthermore, under the facts in this case, the Hannah letters are hearsay exceptions as defined in section 90.803(18)(d), Florida Statutes, and are therefore, not inadmissible on the grounds of hearsay.
As to the admission of the Montgomery letter, we affirm the trial court only as to certain portions of the letter. The only admissible sentences of Montgomery's letter are as follows:
The purpose of this letter is to explore the probability of settlement.
... . Angela Bustillo, Lucy's mother, was ready, willing and amenable to a settlement for the policy limits because of the desperate needs of her child. $300,000.00 invested at that particular time was producing a minimum of 15% interest. Properly invested, such an amount would have produced at least $3,760.00 per month... .
... .
Because of the desperate need of Lucy Bustillo, I will recommend to Mrs. Bustillo that Lucy accept the sum of $3.5 million at this juncture. Certainly, the St. Paul Fire and Marine Insurance Company will wish to discuss settlement with me and I await hearing from you.
Although the admissible sentences contained a settlement demand for 3.5 million dollars, the remainder of the letter was highly inflammatory and prejudicial and thus barred by section 90.403, Florida Statutes, because the probative value was outweighed by the prejudicial effects.
St. Paul's contention that the trial court erroneously instructed the jury is without merit. In reviewing the record, we find no indication that the jury might reasonably have been misled so as to have resulted in a miscarriage of justice. See Florida Power and Light Company v. McCollum, 140 So.2d 569 (Fla. 1962).
On cross appeal, the Bustillos raise the issue of whether an insurer must plead a settlement agreement as an affirmative defense in a negligence action against its insured or be forever barred from raising the settlement issue. St. Paul contends a settlement agreement does not necessarily have to be raised as an affirmative defense, but can be raised as a cross-claim against an intervenor in a bad faith action who was a successful plaintiff in the suit that gave rise to the insured's bad faith action against the insurer.
The Bustillos, however, contend on cross appeal that the trial court erred in not granting their motion for summary judgment on St. Paul's counterclaim to enforce an alleged settlement agreement or recover damages for breach of the agreement. They maintain that res judicata, estoppel, or waiver precludes St. Paul's counterclaim and that settlement is an affirmative defense that should have been raised in the tort litigation and since it was not pleaded, it is now waived according to Florida Rule of Civil Procedure 1.140(h)(1).
In the instant case, the relief sought by St. Paul is in the nature of a compulsory counterclaim to the original tort action. So, it is to that law we must look to resolve this conflict concerning the affirmative defense of settlement. A compulsory counterclaim is one which must be raised by a defendant in the original suit or he will be forever barred from raising it. City of *58 Mascotte v. Florida Municipal Liability Self Insurers Program, 444 So.2d 965 (Fla. 5th DCA 1983), review denied, 451 So.2d 847 (Fla. 1984). The Mascotte court addressed the issue of compulsory counterclaims and adopted the transaction or occurrence test set out in Roberts v. National School of Radio and Television Broadcasting, 374 F. Supp. 1266, 1270 (D.C.Ga. 1974), overruled on other grounds, Mims v. Dixie Finance Corporation, 426 F. Supp. 627 (N.D.Ga. 1976). The Mascotte opinion stands for the proposition that an affirmative answer to any of the following four questions means a counterclaim is a compulsory one:
(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
(2) Would res judicata bar the subsequent suit on defendant's claim absent the compulsory counterclaim rule?
(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
(4) Is there any logical relation between the claim and the counterclaim?
The Bustillo v. Welsh tort litigation obviously involved issues of negligence, proximate cause and damages, while the instant case is concerned with how St. Paul handled the claim that resulted in that earlier litigation. Relying on the Marcotte opinion, we conclude, however, that there is a logical relation between the negligence claim and the contention that that negligence claim has been settled. The logical time to raise that defense is in the accident litigation. When a plaintiff sues a defendant, the defendant should have the benefit of every available defense. To permit an insurer to raise the defense of settlement for the first time after a judgment has been entered against its insured in a negligence action would result in only the insurer benefitting from the use of a prior settlement to defeat a plaintiff's claim of negligence. An insurer should not be permitted to reserve for itself a defense that should be exercised on behalf of its insured. To do so, could result in the insurer's not being liable for a reason that could have likewise protected the insured from judgment. Therefore, we hold that settlement is an affirmative defense that should have been raised in the underlying tort action and, thus, St. Paul is barred from raising the issue of settlement in the instant litigation.
Accordingly, we agree with the Bustillos' contention on cross appeal that the trial court erred in not granting their motion for summary judgment on the grounds that St. Paul was barred from seeking to enforce an alleged settlement agreement with them. Therefore, the denial of the Bustillos' summary judgment is reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR A NEW TRIAL.
DOWNEY and STONE, JJ., concur.