899 So.2d 478 (2005)
LIFEMARK HOSPITALS OF FLORIDA, etc., Petitioner,
v.
Amanda IZQUIERDO, etc., et al., Respondent.
No. 3D04-2748.
District Court of Appeal of Florida, Third District.
April 13, 2005.
*479 Parenti, Falk, Waas, Hernandez & Cortina, and Gail Parenti, Coral Gables, for petitioner.
Hersch & Talisman, P.A., and Patrice A. Talisman; Robert J. Dickman, P.A., Miami, for respondent.
Before WELLS, SHEPHERD and ROTHENBERG, JJ.
SHEPHERD, J.
Lifemark Hospitals of Florida, Inc., d/b/a Palmetto General Hospital, petitions this Court for a writ of certiorari compelling the testimony of Dr. Xenia Aponte as a material witness in this pending medical malpractice case. The lower court has denied Lifemark's motion to take the deposition. We have jurisdiction, Art. V, § 4(b)(3) of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(b)(3), and grant the writ.
The Respondent minor, Amanda Izquierdo, is now a nearly-ten-year-old child born to Yolanda Gonzalez at Palmetto General Hospital on April 12, 1995. Approximately seven hours after delivery, Amanda sustained severe cerebral hemorrhaging which rendered her permanently and totally disabled. Amanda, through her mother and next friend, Yolanda Gonzalez, Yolanda in her own right, and Amanda's father, Juan Izquierdo, are prosecuting this medical malpractice action against the hospital. They allege that the tragedy which befell Amanda was the result of the baby being dropped by hospital staff attending to her in the hospital's well baby nursery. The hospital denies this allegation and contends that Amanda's condition is a result of intrauterine growth retardation (IUGR). The hospital's expert neonatologist has testified that this condition can be caused by a mother's cocaine use during pregnancy.
Through discovery, Palmetto filed various motions for release of Gonzalez's psychiatric records. On June 27, 1999, an agreed order was entered expressly authorizing release of Gonzalez's psychiatric records from North Dade Center, Inc., where Yolanda checked herself in for treatment approximately four months after Amanda's birth. Dr. Aponte was her treating psychiatrist at the Center. The admission records produced by the Center reveal a history of polysubstance abuse since the age of 15, the use of marijuana throughout high school, and cocaine use beginning six or seven years before Amanda's birth. The last use of cocaine was reported to be "one month ago." The information contained in Dr. Aponte's history taken at the outset of her treatment of Ms. Gonzalez is consistent with the admission records. However, the records are silent on the important detail of whether or not Ms. Gonzalez acknowledged cocaine use during her pregnancy. She has denied it.
It is clear from the record that Dr. Aponte is a material witness in this case. Sabol v. Bennett, 672 So.2d 93 (Fla. 3d DCA 1996) (quashing order in medical malpractice action that disallowed further questioning of plaintiff's live-in girlfriend concerning hospitalization allegedly occasioned by drug use without leave of court). *480 Although Ms. Gonzalez has presented a history of cocaine use which supports a conclusion that a "possibility" exists that the baby suffered from IUGR caused by cocaine use during pregnancy, the hospital's medical experts are unable to reach a conclusion within a reasonable degree of medical probability that Amanda suffered from IUGR caused by cocaine use during pregnancy without evidence of use during pregnancy. We have recognized on numerous occasions that "an order which has the effect of denying a party the right to depose an alleged material witness inflicts the type of harm that cannot be corrected on appeal since `there would be no practical way to determine after judgment what the testimony would be or how it would affect the result.'" Sabol, 672 So.2d at 94 (citations omitted); see also Bush v. Schiavo, 866 So.2d 136, 140 (Fla. 2d DCA 2004); Duran v. MFM Group, Inc., 841 So.2d 500, 501 (Fla. 3d DCA 2003). Moreover, by agreeing to the production of the North Dade Center records, the plaintiffs have waived any objection that may have existed to the deposition of Dr. Aponte on the basis of psychotherapist-patient or other privilege. See § 90.507, Fla. Stat. (2001); Lifemark Hospitals of Florida, Inc. v. Hernandez, 748 So.2d 378, 379-80 (Fla. 3d DCA 2000) (finding waiver and compelling deposition of plaintiff's psychologist where the plaintiff previously provided the psychologist's records); H.J.M. v. B.R.C., 603 So.2d 1331, 1334 (Fla. 1st DCA 1992), rev. denied, 613 So.2d 5 (Fla.1992) (partial disclosure of discoverable material emanating from physician's participation in impaired physician's recovery program waived psychotherapist-patient privilege); St. Paul Fire & Marine Ins. Co. v. Welsh, 501 So.2d 54 (Fla. 4th DCA 1987) (production of letters in claim file before raising claim of attorney-client privilege waived the privilege).
Rule 1.280(c) of the Florida Rules of Civil Procedure provides that the court may restrict or deny discovery "for good cause shown." Gonzalez's counsel made no such affirmative showing and the record before us reveals no such finding by the trial court. Consequently, the order in question departs from the essential requirements of law. Sabol, 672 So.2d at 94; Medero v. Florida Power & Light Co., 658 So.2d 566, 567. See also Jones v. Seaboard Coast Line R.R. Co., 297 So.2d 861 (Fla. 2d DCA 1974) (Florida rules of discovery should be construed in light of public policy of ascertainment of truth in legal proceedings).
The petition for writ of certiorari is granted. The order denying Petitioner's motion to take the deposition of Dr. Aponte is quashed. This cause is remanded for further proceedings consistent with this opinion.