UNITED STATES of America, Plaintiff,

v.

PEPPER'S STEEL & ALLOYS, INC., etc., Defendants.

PEPPER'S STEEL & ALLOYS, INC., etc., Plaintiffs,

v.

FLORIDA POWER & LIGHT COMPANY, Defendant.

FLORIDA POWER & LIGHT COMPANY, Cross–Plaintiffs/Third Party Plaintiff,

v.

PEPPER'S STEEL & ALLOYS, INC., etc., Cross–Defendant,

and

United States Fidelity & Guaranty Company, et al., Third Party Defendants.

Nos. 85–0571–CIV–EPS, 86–1531–CIV–EPS.

United States District Court, S.D. Florida.

Aug. 10, 1990.

See also, 720 F.Supp. 164, 688 F.Supp. 1541.

Lawrence W. Puckett, Environmental Enforcement Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C.

Robyn Herman, Asst. U.S. Atty., S.D. Fla., Miami, Fla.

Rueben Bussey, Office of Regional Counsel, U.S. E.P.A., Region IV, Atlanta, Ga.

Michael Northridge, Office of Enforcement and Compliance Monitoring (LE–134S), U.S. E.P.A., Washington, D.C.

John W. Wilcox, Rudnick & Wolfe, Tampa, Fla., for Paynes and Curtis.

Kathleen A. Touby, Touby Smith DeMahy & Drake, P.A., Miami, Fla., for Miami Battery.

David B. Weinberg, Weinberg, Bergeson & Neuman, Washington, D.C.

John Barkett, Coll, Davidson, Carter, Smith, Salter & Barkett, P.A., Miami, Fla., Attorneys for FPL.

Jack Chisolm, Deputy Gen. Counsel, Tallahassee, Fla.

Elizabeth Nelson, Mendes & Mount, New York City.

Greg M. Gaebe, James A. Walker, Gaebe, Murphy, Mullen & Antonelli, Coral Gables, Fla., for London Market Insurers.

Landon K. Clayman, Baker & McKenzie, John M. Murray, Sheryl Berkowitz, Thornton, David & Murray, P.A., Miami, Fla., for Home.

Richard L. Wassenberg, Ponzoli & Wassenberg, P.A., Miami, Fla., David Cassidy, Stephen Smirti, Edward T. Finneran III, Rivkin Radler Bayh Hart & Kremer, Uniondale, N.Y., for USF & G.

Stanley V. Buky, George, Hartz & Lundeen, P.A., Coral Gables, Fla., Oscar Blasingame, Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, Fla., for CNA.

William Martin, Peterson & Bernard, Fort Lauderdale, Fla., Keith, Mack, Lewis, Allison & Cohen, Miami, Fla., Lester O. Brown, Anderson Kill Olick & Oshinsky, P.C., New York City, for Pepper's and Bloom.

Steven R. Berger, Wolpe, Leibowitz, Berger & Brotman, Miami, Fla., for Continental Cas.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

### ORDER DENYING MOTION TO COMPEL

This cause comes before the Court upon the motion of PEPPER'S STEEL (PEPPER'S) and NORTON BLOOM (BLOOM) to compel FLORIDA POWER AND LIGHT's (FPL) representative, J.W. Molyneaux to answer deposition questions and determine validity of his asserted attorney-client privilege. J.W. Molyneaux was a lawyer for FPL. Pursuant to a document request by third party Defendant, UNITED STATES FIDELITY & GUARANTY COMPANY (USF & G), FPL inadvertently sent them some documents which were memoranda from Molyneaux to Dennis Chow, FPL's supervisor of purchasing and procurement. FPL claims the accidental disclosure resulted from a combination of multiplicitous document production and a mishap in its electronic document retrieval system.

The issue first came up at the deposition of Dennis Chow, whose knowledge of the contents of the documents turned out to be quite limited. The parties have alleged opposing versions of the facts. In sum, FPL claims the documents are privileged. PEPPER'S claims FPL has waived the privilege as to these documents and related communications by 1) producing the documents, and 2) permitting Chow to be questioned about them at his deposition. PEPPER'S also wishes to compel production of all other documents representing communications between the same parties on the same subject matter. Below is a summary of the arguments.

PEPPER'S contends that USF & G announced in May 1989 that they received documents from FPL which were available for all parties' inspection and that USF & G delivered copies to PEPPER'S. In USF & G's memorandum in support of PEPPER'S motion to compel, it states that it made its request in May, never delivered copies to PEPPER'S, and only received the documents in August and October 1989. However, USF & G supports PEPPER'S motion arguing that inadvertent or not, a voluntary, accidental disclosure waives any privilege FPL might claim in the documents. Furthermore, the fact that the privilege was not asserted when the documents were introduced at the Chow deposition, and when Chow was questioned about them, constitutes a second waiver.

FPL characterizes the documents as being about four pages out of a production of over 100,000 pages. The production was rushed to try to keep pace with the busy deposition schedule last summer. Contrary to PEPPER'S contention that ten months elapsed between the original disclosures and FPL's attempts to get the pages back, FPL contends that 14 days at most elapsed between the handing of the four documents to PEPPER'S counsel from USF & G's counsel on January 29, 1990 (at the Chow deposition) and FPL raising the privilege at the next opportunity on February 12, 1990 (the continuation of the Chow deposition). Furthermore, FPL claims it interposed an attorney/client privilege instruction at the outset of the Chow deposition, but Chow could not testify about the documents anyway, as he knew nothing.

FPL claims it made an effort to get the documents back from USF & G long before PEPPER'S was even aware of their existence. This is why PEPPER'S is not aware of any of FPL's efforts to preserve the privilege. Copies of the letters sent to all possible recipients of the documents in October, 1989 are attached to FPL's memorandum of law in opposition to PEPPER'S motion to compel. As to the questioning of Chow, FPL claims the questions asked were not invasive of the privilege since Chow knew nothing of the underlying facts, only that he received or wrote the documents, which fact is not privileged. Furthermore, on the second day of the deposition, February 12, 1990, FPL did raise an objection about questions which impinged on the privilege, but let non-invasive questions be answered to demonstrate Chow's lack of knowledge. This was the first opportunity PEPPER'S had to question Chow about the documents.

Additionally, FPL contends that the situation is governed by the non-waiver stipulation providing that inadvertent production of privileged documents does not waive a privilege as to any other documents or communications concerning the subject matter. FPL first discovered the blunder when a USF & G lawyer returned a clearly privileged letter, obviously produced in error.

FPL urges the Court to adopt the relevant circumstances test of *Parkway Gallery v. Kittinger,* 116 F.R.D. 46, 50 (M.D. N.C.1987), in determining whether an inadvertent production waives privilege. The Court must weigh:

> (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error.

*Accord Lois Sportswear v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y.1985).

As examples of precautions taken, FPL cites the fact that three of these four privileged documents were on its August 1989 catalogue of privileged documents. The inadvertent production came when unnumbered copies of the same documents were re-photocopied and renumbered, for fear that the originals, gathered and copied in 1983, might have been lost by 1989. To fully comply, FPL copied all purchasing files and paralegals delivered them before they were reviewed by attorneys. New numbers were placed on them, so comparing them against the catalogues did not show they were privileged. Once the prob-

lem was discovered FPL wrote to the counsel participating in the production and asked for return of the privileged pages. However, because of the way the computer system had been programed, it was impossible to see exactly what privileged documents were included.

FPL cites several places in Chow's deposition where he cannot testify about the contents of documents because he does not have any knowledge of them. PEPPER'S claims Chow answered questions without raising the privilege, however, PEPPER'S does not refer to any specific answers. FPL claims says it did not object because it preferred to let Chow demonstrate his ignorance of the contents of the documents. Once PEPPER'S started its cross examination of Chow on February 12, 1990, FPL invoked the attorney-client privilege. The privilege had also come up on January 29, 1990 when Chow was asked about conversations with Molyneaux.

On the issue of overriding fairness or needs of justice, FPL claims there is no unfairness to PEPPER'S here, inasmuch as the documents are of marginal significance. PEPPER'S contests this and attempts to demonstrate its need for the documents in its motion. FPL states that the documents are dated after the DERM told BLOOM to clean up his property, and after he did. Thus they post date the discovery of contamination and could not relate to it.

Finally there is the issue of the non-waiver stipulation. This was signed by multiple parties participating in production and approved by the Court in October 1989 as a paragraph of the Court ordered Stipulation Regarding Privileged and Protected Information[1] and provides that the production of documents in which the privilege could have been invoked does not waive the privilege as to any other document or discussion related to the produced document. PEPPER'S claims it did not sign the agreement at the time, but finally signed it in January 1990. This is of no significance. The Court ordered the agreement November 17,

1989. It applies to these and all documents in this litigation.

PEPPER'S takes issue with the FPL assertion that the four privileged documents were produced only to USF & G in a pack of 100,000 pages. PEPPER'S claims they were produced in response to PEPPER'S and BLOOM's Second Request for Production during a routine Rule 34 production and that there were no more than 10,000 pages. Nor was it a rushed accelerated discovery. PEPPER'S claims FPL has not met its burden of proof to establish that the privilege was not waived. *Parkway*, cited by FPL actually found the privilege was waived. The Court found that it could not conclude that the methods for keeping privileged documents were not lax. The situation was similar here, as there, where it was clear on the face of the documents that they were likely privileged.

PEPPER'S cites much authority for its point that in the discovery context, the requirement of intentional waiver has been often rejected. The cases that do require specific intent rely on a case often distinguished because the specific intent requirement originated with the need to comply with New York State law. Furthermore, despite whatever efforts FPL made to maintain confidentiality or retrieve the documents, the cat is out of the bag, there is no order the Court could enter to erase the knowledge that has been gained, or metaphysically restore the confidentiality of the documents. Finally, PEPPER'S claims that the non-waiver stipulation is inapplicable to these documents because FPL failed to follow the "Procedures for Asserting Protection" in paragraph three.

However, it is clear that this section has nothing to do with non-waiver of *privileged* documents, rather it pertains to marking documents which the parties wish to come under the confidentiality agreement, i.e. documents to be protected from public disclosure. PEPPER'S claims FPL has not shown that it communicated with USF & G informing them that it had produced privi-

---

1. The Stipulation Regarding Privileged and Protected Information, which the Court ordered on October 10, 1989 is attached to this opinion in the appendix, and is incorporated by referrence herein.

leged information, as the non-waiver agreement requires. This is clearly inaccurate inasmuch as the letters are attached to FPL's memorandum. The Court finds that confidentiality agreement precludes any waiver of privilege as to any other documents or discussions related to the produced documents.

As to the other arguments, although FPL produced the documents through its own mistake, the Court cannot conclude that FPL was negligent in attempting to preserve the privilege. Mistakes of this type are likely to occur in cases with voluminous discovery. At best, these situations are resolved amicably, by counsel returning documents which are obviously privileged and inadvertently produced. It is unfortunate that such could not be the case here and that the Court was forced to expend a great deal of time on this relatively minor matter. However, such has been the case throughout the course of this litigation.

FPL made every reasonable effort to protect its privilege. The *Parkway* test, which the Court finds most persuasive, favors protection of the privilege, as does the Court's confidentiality order. The relative prejudice to PEPPER'S and BLOOM is minimal, inasmuch as they are not entitled to discover privileged material, and their receipt of these documents was a windfall. Accordingly, these documents are not admissible evidence in these proceedings and the parties shall not be permitted any further examination of FPL's attorney. Nor shall production of any other related documents or communications be compelled. Accordingly, and upon careful review of the record, it is hereby

ORDERED AND ADJUDGED that the Motion to compel is DENIED.

DONE AND ORDERED.