645 So.2d 1035 (1994)
Robert E. KUSCH, Donald A. Hopper and Virginia M. Hopper, Petitioners/Cross-Respondents,
v.
James Troy BALLARD a/k/a Jimmy Ballard, Respondent/Cross-Petitioner.
No. 94-0783.
District Court of Appeal of Florida, Fourth District.
November 9, 1994.
Rehearing and Rehearing Denied December 28, 1994.
Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Theodore W. Herzog, P.A., Vero Beach, for petitioners, cross-respondents.
Marjorie Gadarian Graham, Marjorie Gadarian Graham, P.A., West Palm Beach, for respondent, cross-petitioner.
Rehearing and Rehearing En Banc Denied December 28, 1994.
PER CURIAM.
By petition and cross-petition for writ of certiorari we are asked to review an order of the trial court disqualifying counsel for both parties in a pending lawsuit. We grant both the petition and the cross-petition, and quash both orders disqualifying counsel in the instant case.[1]
GLICKSTEIN and FARMER, JJ., concur and also respectively concur specially with opinions.
STEVENSON, J., concurs in part and dissents in part with opinion.
GLICKSTEIN, Judge, concurring specially.
The facts of the case are set out in Judge Stevenson's opinion.
There are two issues, the first being whether the inadvertent event described in Judge Stevenson's opinion constituted a waiver of the attorney-client relationship. He and I agree that it did not; thus the subject letter was and is a privileged communication.
The second issue is whether either or both attorneys should have been disqualified by the trial court. Judge Farmer and I agree that neither should be disqualified, but some of our reasons differ. We further agree that General Accident Insurance Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986), should not apply to this case. My view is that the facts in that case were so unique and, hopefully, so non-recurring that the decision should be limited to its facts.
As Judge Farmer's opinion points out, if we permit the receiving lawyer's disqualification, an unethical lawyer could intentionally fax a privileged communication to a formidable opponent, claim inadvertence, and successfully have the lawyer disqualified. Moreover, we are not certain if the information was revealed by the lawyer to the client, particularly if the lawyer believed the information was privileged and received inadvertently. Finally, whatever the receiving lawyer's client could legitimately do with the information, he could also do without it.
As for the sending lawyer, there is no need to deprive a client of counsel because of this inadvertence.
FARMER, Judge, concurring.
I should first admit straightaway to a certain distaste for the practice of judges disqualifying lawyers for parties in civil cases. There has never been a persuasive theoretical basis demonstrated to my satisfaction for such an extraordinary remedy. Nothing in *1036 any constitutional provision, statute or rule of practice or procedure purports to repose such a power in civil trial judges.[2] Moreover, the remedy strikes at the heart of one of the most important associational freedoms that a person may have  the right to choose one's own lawyer. Even if the basis for disqualification lies in a violation of the lawyer's ethical code, I do not understand why the disciplinary process of The Florida Bar is not exclusively authorized to grant such relief.
Nor has anyone shown why an ordinary malpractice or other damages action against an offending attorney is not the more appropriate remedy. In this case the offending lawyer is said to have negligently disclosed a privileged communication to his client's adversary in a pending legal action.[3] One remedy for this act might be to mulct the offending lawyer in damages if the client thereby suffers monetary loss. To order disqualification has all the attributes of applying an equitable remedy where the legal remedy of damages is wholly suitable to the purpose. One might just as well shoot the patient rather than treat the wound  or junk the car rather than fix the flat tire.
I recognize that our supreme court as well as this very court have placed their stamps of approval on judicial disqualification of civil trial lawyers, in some circumstances. See State Farm Mutual Automobile Ins. Co. v. K.A.W., 575 So.2d 630 (Fla. 1991); Birdsall v. Crowngap Ltd., 575 So.2d 231 (Fla. 4th DCA), cause dism'd, 581 So.2d 1307 (Fla. 1991); and General Accident Ins. Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986). K.A.W. merely stands for the proposition that the remedy is proper in cases  unlike the current one  where a lawyer represents multiple parties in multiple cases with a common core of facts and issues, and client confidences can be used unfairly in the separate litigation. General Accident, with which I entirely disagree but am bound to follow, addresses the situation where client confidences are disclosed by the negligent act of the trial judge; it does not, as here, involve a "negligent" disclosure by one party's lawyer to the opposition lawyer.
Neither of the cases comes close to embracing the facts involved in the present disqualification. Although I recognize the surface plausibility (especially, given the internal logic of General Accident) and the good faith of judges of this court in feeling bound to apply them here, I cannot agree to do so. I would limit them to their precise facts and not extend them to disqualify civil trial lawyers whenever we perceive that one *1037 side has acquired some informational advantage or other arising from conduct of a party's lawyer. The extension of this truly extraordinary remedy to the facts here would simply be more than I could bear.
Indeed, I should think that  even for enthusiastic advocates of the remedy  the facts of this case would present an unusually ill advised premise to extend the measure. Put simply, one side's lawyer has negligently transmitted a fax communication to the other side's lawyer containing information that has nothing to do with the substance of the dispute but is tactically advantageous to the receiving lawyer's client.[4] The trial court has remedied the situation by disqualifying the entirely innocent receiving lawyer. For doing what? Reading his fax mail? Why must the receiving lawyer's client lose his entirely permissible choice of lawyer because of the neglect (or, perhaps, purposeful act) of the adversary's lawyer? I therefore entirely agree with Judge Glickstein in vacating the order disqualifying the receiving lawyer.
This situation is simply too amenable to manipulation by vexed and unscrupulous adversaries bent on removing an adept foe to equalize the score. We should understand that we would be handing those without scruple a powerful and tempting tool, allowing them to block the opposing lawyer out of the game. It would be to disqualify Don Shula and thus punish the Miami Dolphins, simply because he has innocently perceived the plays called by the opposing team's quarterback. I do not believe that judicial disqualification of trial lawyers should be used for this end, any more than I believe that the referees at football games should choose who the coaches or players will be.[5]
I therefore concur with the court's certiorari review and vacating the orders disqualifying the lawyers in this case.
STEVENSON, Judge, concurring in part and dissenting in part.
I must respectfully dissent in part from the majority opinion because although I join in granting the cross-petition, I would deny the petition.
The essential facts are not in dispute. Defendant's attorney prepared a letter along with a proposed motion to withdraw and addressed the letter to one of his clients. A secretary of defendant's attorney inadvertently transmitted by facsimile the letter and motion to plaintiffs' counsel. The cover sheet indicated that the information contained in the facsimile message was attorney privilege and confidential information intended only for the use of the individual named. Plaintiffs' attorney read portions of the letter. Immediately upon realizing that the letter had been inadvertently transmitted, plaintiffs' attorney stopped reading it, notified *1038 defendant's counsel and returned the letter.
Plaintiffs then sought production of the letter for the purpose of using it as evidence against the defendant and claimed that defendant waived any attorney-client privilege by the inadvertent disclosure. Plaintiffs also claimed that the letter contained statements revealing a conspiracy to abuse the judicial system or commit a fraud on the court. In response, defendant moved to disqualify plaintiffs' counsel based upon the inadvertent transmittal and receipt of the letter.
The trial court held a hearing on plaintiffs' motion for production and defendant's motion for disqualification. After an in camera review of the letter, the court determined that the letter was protected by the attorney-client privilege. The court found that the letter contained information concerning the status of the lawsuit and provided plaintiffs' attorney with an unfair advantage in the litigation. The court further determined that there was nothing in the letter to indicate any sham or fraudulent pleadings as asserted by plaintiffs. The court concluded that the attorney-client privilege had not been waived by the accidental disclosure. The trial court disqualified plaintiffs' attorney based on unfair advantage, and also disqualified defendant's counsel. The parties were given thirty days in which to obtain new counsel, and discovery and pleadings were abated until new counsel could be obtained. These petitions followed.
I do not believe that the trial court departed from the essential requirements of law in disqualifying plaintiffs' counsel. The trial court's ruling was largely predicated on General Accident Insurance Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986). In that case, this court held that where the trial judge inadvertently forwarded privileged materials to the wrong party's counsel, disqualification of that party's counsel was warranted because of the possibility of improper advantage. The court found this to be the prudent course of action to avoid the appearance of impropriety.
Like so many other ethical considerations in the practice of law, perceptions are of the utmost importance. Thus, how much of an advantage if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process.
Id. at 506.
The petitioners argue that the inadvertent disclosure of the letter waived any attorney-client privilege in regard thereto. Petitioners contend that General Accident is distinguishable because (1) this case involves the inadvertent disclosure of materials by counsel not by the trial judge as in General Accident; and (2) the information at issue is not of evidentiary significance in contrast to the "claim file" in General Accident. We do not find persuasive petitioners' attempts to distinguish General Accident. Although the inadvertent disclosure in General Accident was made by the trial judge, the significant similarity between this case and General Accident is that both disclosures were made inadvertently by someone other than the holder of the privilege, i.e., the client. Secondly, even though the information revealed in the present case may not be of evidentiary significance, the trial court found that the letter contained information about the status of the lawsuit and the client which gave plaintiffs an unfair advantage in the litigation.
Petitioners rely on Ray v. Cutter Laboratories, Div. of Miles, Inc., 746 F. Supp. 86 (M.D.Fla. 1990), for their waiver argument, and claim that Ray is controlling because the decision was predicated in part on this court's opinion in Hamilton v. Hamilton Steel Corp., 409 So.2d 1111 (Fla. 4th DCA 1982). In Ray, the court held that disclosure of a 157 page confidential memorandum inadvertently produced in response to a request for production constituted a waiver of the attorney-client privilege. In analyzing whether Florida law would support a finding of waiver the court cited Hamilton and stated:
According to [the Fourth District Court of Appeal] in Florida "[i]t is black letter law that once the privilege is waived, and the *1039 horse is out of the barn, it cannot be reinvoked." Id. at 1114 (citing Florida Statutes Annotated, section 90.507 and 5 Ehrhardt's Florida Practice, Florida Evidence § 507.1 (1977)). Florida would thus seem to be aligned with the traditional view holding that any disclosure, whether inadvertent or intentional, waives the privilege.
Ray, 746 F. Supp. at 88.
I believe that the federal district court reads far too much into the court's decision in Hamilton to reach its conclusion that under Florida law, an inadvertent disclosure, by someone other than the client, amounts to a waiver of the attorney-client privilege. In Hamilton, this court found that the attorney-client privilege as it pertained to settlement details had been waived by an attorney's public announcement of the settlement at a hearing. There, a single counsel represented multiple defendants. The single counsel showed up at a hearing and announced on behalf of all his clients all of the details of the settlement. Id. at 1114. Later, some of the clients who were not present at the hearing denied that they had agreed to a settlement and claimed that any details of the settlement would be confidential in any event. Id. The factual issue of whether or not the clients had actually agreed to the disclosure was neither addressed nor resolved in Hamilton. The court held that once communications protected by the attorney-client privilege are voluntarily disclosed, the privilege is waived and cannot be reclaimed. Thus, it is quite apparent that Hamilton does not address the specific issue of inadvertent disclosure by counsel of attorney-client information because the disclosure by counsel in Hamilton was clearly voluntary and intentional.
There appear to be no other Florida cases directly on point. However, the applicability of the law set forth in Hamilton to the present case is not particularly helpful because of the disparate factual scenario involved there, i.e., voluntary disclosure of confidential information by an attorney. On the other hand, the applicability of General Accident to the case sub judice is clear and definite  in General Accident the court explicitly held that a lawyer may be disqualified from representing a client when otherwise privileged material belonging to the opposing party has been inadvertently disclosed to that lawyer. The only difference between the facts in General Accident and the facts in the instant case is that in General Accident, the inadvertent disclosure was made by the trial judge and in this case the inadvertent disclosure was made by the lawyer's secretary. I believe that this factual incongruence between General Accident and the instant case is a distinction without legal significance.
In a well-reasoned federal case it was held that counsel's inadvertent disclosure of privileged documents during discovery was insufficient to constitute a waiver of the attorney-client privilege. Georgetown Manor, Inc. v. Ethan Allen, Inc., 753 F. Supp. 936 (S.D.Fla. 1991). Accord Smith v. Armour Pharmaceutical Co., 838 F. Supp. 1573 (S.D.Fla. 1993). In Georgetown Manor, transcripts containing attorney-client privileged information were inadvertently delivered by Ethan Allen's counsel to the opposing party. The court recognized that the federal courts were divided over whether an inadvertent disclosure of attorney-client privileged communications by a party's counsel to the adversary constituted a waiver of the privilege and that the Eleventh Circuit Court of Appeals had not decided the issue. Id. at 937. After a review of the divergent authority, the court embraced those cases holding that inadvertent disclosure by counsel should not constitute a waiver. Quoting from Mendenhall v. Barber-Greene Co., 531 F. Supp. 951, 954 (N.D.Ill. 1982), the court in Georgetown Manor stated:
We are taught from first year law school that waiver imports the "intentional relinquishment or abandonment of a known right". [footnote omitted] Inadvertent production is the antithesis of that concept. In response to a production request encompassing all Mendenhall files, (Mendenhall's counsel) provided (his adversary) with 28 complete files. When he pored [sic] over the files (as was his right) (the adversary) found the four letters now at issue. Mendenhall's counsel now says that their delivery was unintended.
Mendenhall's lawyer (not trial counsel) might well have been negligent in failing to *1040 cull the files of the letters before turning over the files. But if we are serious about the attorney-client privilege and its relation to the client's welfare, we should require more than such negligence by counsel before the client can be deemed to have given up the privilege ... No waiver will be found here. (emphasis in original)
Id. at 938.
In further support of its ruling the court in Georgetown Manor said:
In this regard we agree with the American Bar Association Section of Litigation which advises that:
Where the disclosure resulted because of the attorney's negligence and not that of the client, the client's privilege has not been necessarily relinquished. The more modern rationale, therefore, is that the negligence-free client, whose privilege it is in all events, should not bear the burden of global loss of an expectation of confidentiality because of the attorney's negligence in protecting that confidentiality... .
American Bar Association Section of Litigation, The Attorney-Client Privilege and the Work Product Doctrine, at p. 66 (2d ed. 1989).
Id. at 939 (emphasis in original).
I find that the ruling in Georgetown Manor comports with logic and reason and is consistent with this court's opinion in General Accident. Therefore, I would hold that under Florida law, inadvertent disclosure by counsel of attorney-client privileged information does not waive the privilege.
I hasten to add that disqualification of counsel, even where facts substantially similar to those sub judice are present, is not mandatory. Rather, the decision whether or not to disqualify counsel in any given case rests within the sound judicial discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. The trial court must look at the nature of the improper disclosure or conduct, and must, in its judicial wisdom, decide if one party has thereby gained an unfair advantage over the other. See Pantori v. Stephenson, 384 So.2d 1357 (Fla. 5th DCA 1980); Holland v. Tenenbaum, 360 So.2d 493 (Fla. 4th DCA 1978). The trial court has conducted such an analysis here, and I simply find that the trial court did not abuse its discretion in granting the motion to disqualify plaintiffs' counsel.
However, I agree with the majority that the trial court departed from the essential requirements of law in disqualifying defendant's counsel. I can find no substantive basis for this order of disqualification. It is well settled that disqualification of a party's chosen counsel is (1) a harsh and drastic remedy, (2) should be resorted to sparingly, and (3) must find its basis in counsel's violation of some rule of law or breach of the Code of Professional Responsibility resulting in an unfair advantage. See General Accident, 483 So.2d 505 (Fla. 4th DCA 1986); Andrews v. Allstate Ins. Co., 366 So.2d 462 (Fla. 4th DCA 1978); Dawson v. Bram, 491 So.2d 1275 (Fla. 2d DCA 1986); Pantori v. Stephenson; and Holland v. Tenenbaum. Indeed, the result may well be different where the trial court finds that the disclosure is not accidental as claimed or is made for some ulterior motive. In such instances, the trial court may well be justified in disqualifying or otherwise sanctioning counsel that made the disclosure. However, those are not the facts as found by the lower court in the instant case.
Accordingly, I would deny the petition for certiorari and grant the cross-petition.
NOTES
[1] In deciding this case, we have been provided with a letter which the trial court received for in camera inspection and which a majority of the panel (Judges Glickstein and Stevenson) has determined to be protected by the attorney client privilege. The letter will therefore remain sealed and be returned to the trial judge.
[2] See R. Regulating Fla. Bar 4-1.7 to 4-1.17. All of these rules are directed to the lawyer, not to a civil trial judge. Rule 4-1.16(c) alone even refers to a court and it actually requires a lawyer to continue representation when ordered to do so by a judge in a proceeding, even where there exists good cause for the lawyer to terminate the representation. Indeed the rules governing conflicts of interest and termination of representation by attorneys are so detailed and extensive that the absence of a specific authority for judges to disqualify them should lead one properly to view these rules as deliberately withholding from trial judges that power.
[3] We have been asked to decide the question whether an inadvertent disclosure of privileged information operates to lose the privilege. I decline to address that issue for two reasons. First, and foremost, I do not regard that issue as necessarily implicated by the disqualification issue on which our extraordinarily limited certiorari jurisdiction is based. No one has suggested that the contents of the disclosed communication were either admitted or excluded as evidence to prove an issue at a contested hearing. Without an evidentiary issue pending, I see no basis for us to make an anticipatory ruling on a issue that may never arise.

Second, we do not have the kind of fully developed record of facts and law in this common law certiorari case that would allow us to assay whether it is necessary to pronounce a global rule on the subject. It might be enough, if the issue were directly and necessarily presented, to decide that whether the privilege is lost by inadvertent disclosure depends on the totality of the circumstances. If there is no need for a universal rule, then we should not create one.
I will say that I do not agree that our decision in General Accident Ins. Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986), can be read to decide the issue. In fact it does not even mention the issue, much less purport to make a decision on it. On the other hand, our decision in Hamilton v. Hamilton Steel Corp., 409 So.2d 1111 (Fla. 4th DCA 1982), does at least purport to address it. Whether we could distinguish Hamilton on the basis of inadvertent disclosure is not for me to say until that issue is squarely presented.
[4] Ordinarily I would summarize the contents of the document that led to the decision of the trial judge, in order that the reader might better understand the conclusions I have reached. But in this case, a majority has voted to uphold the confidentiality placed on the contents of the letter by the trial judge, and thus I do not feel authorized to disclose the contents in this opinion. I will say, however, that the letter had nothing to do with strategy and tactics, or about claims or defenses, or about evidence in the ongoing litigation.

We should indulge no fantasy, however, that the party is ignorant of its contents. The receiving lawyer had a duty to disclose to his client any communications received in the course of representation. See R. Regulating Fla. Bar 4-1.4(a). Moreover, the law imputes the knowledge of the agent to the principal. Anderson v. Walthal, 468 So.2d 291 (Fla. 1st DCA 1985). If the client knows the contents of the letter as a result of previous disclosure by the disqualified lawyer, surely any successor lawyer would learn the same contents from the client himself. Hence it is difficult for me to comprehend what policy is served by perpetuating a charade of confidentiality.
[5] If there absolutely had to be a disqualification of someone in this circumstance, logic would suggest that it be limited to a removal of the sending lawyer. Because I would not extend the remedy to the facts and circumstances of the present case, however, I want to stress that I disagree with the removal of any side's lawyer. The referees at football games may properly impose a penalty for an infraction of the rules, but I do not believe that our supervisory power over the conduct of lawyers who appear before us allows us to remove a lawyer except for the most compelling of reasons and then only where no other remedy will quite suffice. The sending lawyer's infraction here is far too slight to support the representational death penalty. I therefore also join that part of this court's decision that reverses the disqualification of the sending lawyer.