POLEN, Judge.
Robert Stevenson (Robert) appeals from a trial court’s post-judgment order denying his motion to enforce a proposed modification agreement to which the parties had agreed subsequent to their Marital Settlement Agreement. Despite the former wife, Laura Stevenson (Laura), having accepted the benefits of that agreement, and subsequently declining to comply with its terms, the trial court, in denying enforcement, held in the wife’s favor, finding that “there was no agreement, no meeting of the minds, and nothing to enforce.” In doing so, the trial court excluded certain allegedly privileged testimony. We reverse.
As part of the original Marital Settlement Agreement, it was agreed between the parties that the wife would move out of the marital residence, thereby enabling the parties to sell that property, along with additional vacant, unencumbered real property located in Ocala, Florida, which was worth approximately $10,000. They agreed, as part of the Marital Settlement Agreement, that they would evenly divide the profits on the real estate, which they would continue to own jointly.
The original agreement also contemplated that Laura, along with her three children, *369 would reside in a rental unit for a period of two years, after which Robert would purchase a home in an area agreeable to both parties, and would then rent it to Laura. Subsequent to that agreement, however, Laura determined to purchase a home solely in her name, and applied for mortgage financing in her name only. In order to facilitate Laura’s qualification for mortgage financing, the parties agreed that Laura would transfer to Robert her one-half interest in the Ocala property in exchange for $5,500.00, which would provide her with the cash necessary to close on the house.
Pursuant to the terms of the final (revised) modification agreement, Robert executed the modification agreement, quitclaim deed transferring his 50% interest in the Ocala, Marion County, Florida realty to Laura, and also tendered a cashier’s check in the amount of $5,500.00 made payable to Laura. He signed the modification agreement in the presence of two witnesses and his signature was notarized on February 16, 1994. On February 18,1994, Laura executed the modification agreement and quitclaim deed at the office of her attorney. Her attorney’s legal secretary, who had been in that position for over ten years, testified that Laura read the documents in her presence and signed both the modification agreement and quitclaim deed in her presence.
Although Robert’s attorney was out of town at the time, she had instructed her secretary to authorize the office of Laura’s attorney to release the $5,500 cheek to Laura only upon confirmation of the following two contingencies having been met: 1) receipt of a letter from CTX Mortgage Company indicating that Laura qualified for the loan, and 2) verification that she had signed the modification agreement. Laura’s signature was telephonically confirmed to Robert’s attorney’s office, which then authorized release of the check based on that confirmation.
At some point between February 18 and February 25, Laura negotiated the cashier’s check and used that money to satisfy her mortgage company that she had adequate non-borrowed funds to close the transaction. She then sent Robert a note, with two checks, written on her own personal accounts at Barnett Bank, totalling $5,500, indicating that she was returning same since “[ujnfortu-nately, the house did not close today.” However, she did not return the quitclaim deed to the Ocala realty. On February 25, 1994, the originally anticipated closing date, Laura returned to her attorney’s office, asking to reread the modification agreement. Coincidental to the time of that visit, the original executed modification agreement, original quitclaim deed, and the entire original file of her attorney disappeared under unproven, but questionable, circumstances. Laura contends that the original agreement, if it were available, would confirm that she had “circled” a section of the agreement and had made certain changes, which ought to serve as evidence that there was no meeting of the minds and, consequently, no contract existed in law. We disagree.
Pursuant to the Restatement (Second) of Contracts, Section 69(2), “an offeree who does any act inconsistent with the offer- or’s ownership of offered property is bound in accordance with the offered terms.” In addition, such an exercise of dominion “even though not intended as acceptance ... is a sufficient manifestation of assent_” Restatement (Second) of Contracts, § 69, comment (e). See also Scocozzo v. General Dev. Corp., 191 So.2d 572, 579 (Fla. 4th DCA 1966) (by accepting benefits pursuant to contract a party is estopped from questioning the validity and effect of the contract). In the instant case, the record reflects that Laura accepted Robert’s check, cashed it, used the money to satisfy her mortgage company that she had funds to close, picked up the quitclaim deed to the Ocala property, then returned the former husband’s $5,500 to him written on two of her own personal checks. Here, pursuant to our holding in Scocozzo, we find that the former wife’s taking and cashing the $5,500 check was an acceptance of benefits under the contract, and mandates legal ratification of the contract even if she evidenced a contrary intent.
In addition, we find that the trial court erred in excluding testimony of the attorney’s secretary confirming that Laura had signed the modification agreement. We find that any conceivable attorney-client privilege which may have attached to the secretary’s knowledge of Laura’s signing of the modification agreement was waived when she *370 conveyed this information to the secretary of Robert’s attorney. Pursuant to our holding in Hamilton v. Hamilton Steel Corp., 409 So.2d 1111, 1114 (Fla. 4th DCA 1982), “once the privilege is waived, and the horse out of the barn, it cannot be reinvoked.” Thus, this communication was not confidential so as to be excludable under the attorney/client privilege. Furthermore, we find that the hearsay objection ought to have been overruled as well since Ms. Brooks (the secretary of Laura’s attorney) was acting as Laura’s agent. Consequently, her statements are admissible under the party-opponent exception. Premier Cruise Lines Ltd. v. Gavrilis, 554 So.2d 659 (Fla. 3d DCA 1990).
Finally, we find no error in the trial court’s having failed to apply a presumption that the original modification agreement, if it were available, would prove to have been unfavorable to Laura. Arguably, here the document does seem to have disappeared under questionable circumstances. However, since it has not conclusively been proven that Laura is responsible for its disappearance, it cannot be said that the trial court erred on this issue. Nevertheless, we reverse on the former issues.
STEVENSON, J., and SCHAPIRO, SHELDON, Associate Judge, concur.