698 So.2d 276 (1997)
ABAMAR HOUSING AND DEVELOPMENT, INC., d/b/a Abamar-BB, Federal Insurance Company and American Home Assurance Company, Petitioners,
v.
LISA DALY LADY DECOR, INC., and Republic Western Insurance Company, Respondents.
No. 97-70.
District Court of Appeal of Florida, Third District.
June 25, 1997.
Rehearing Denied September 10, 1997.
*277 Moye, O'Brien, O'Rourke, Hogan & Pickert and James E. Moye and Bryan L. Capps and Stephen W. Pickert, Orlando, for petitioners.
Katz, Barron, Squitero, Faust & Berman and Albert J. Xiques and Michael I. Kean; William C. Hearon, Miami, for respondents.
Before FLETCHER, SHEVIN and SORONDO, JJ.
SHEVIN, Judge.
Abamar Housing and Development, Inc. ["Abamar"], Federal Insurance Company, and American Home Assurance Company [collectively "petitioners"], seek a writ of certiorari to quash a trial court order denying Abamar's motion for the return of certain documents protected by attorney-client privilege that were inadvertently disclosed during an extensive document production. We find that the order departs from the essential requirements of law and that there will be no adequate remedy on plenary appeal. See General Accident Ins. Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986). We grant certiorari, and quash the order.
Abamar, a general contractor, subcontracted several portions of a construction project to Lisa Daly Lady Decor, Inc. ["Lisa Daly"]. Lisa Daly sued petitioners for breach of the subcontract; Abamar countersued. Lisa Daly's surety, Republic Western Insurance Company ["Republic"],[1] filed a declaratory judgment action against Abamar and Lisa Daly. Abamar filed a third-party complaint against Republic for bad faith and for recovery under the surety bonds.
Lisa Daly filed a request for production from Abamar seeking certain project documents. Lisa Daly requested substantially the same documents from non-party Balfour Beatty, Inc., an Abamar minority shareholder, and from its subsidiary Balfour Beatty Construction, Inc. [collectively "Balfour Beatty"]. Balfour Beatty objected to the production of certain documents, and moved for a protective order on the grounds of privilege. The trial court's August 23, 1995 order provided:
3. To the extent that counsel for Balfour Beatty, Inc. wishes to assert a privilege with regard to any documents subpoenaed, counsel shall provide to opposing counsel at or prior to production a log listing all such documents to which a privilege is being asserted....
In preparation for the production, a lawyer and a paralegal, representing petitioners and Balfour Beatty, over the course of two days, reviewed the documents to be produced to attempt to ensure against inadvertent disclosure of privileged documents. Approximately 70 boxes containing over 100,000 documents were produced on October 13-14, 1995, during the deposition of Mark E. Hood, Balfour Beatty's records custodian. Respondents' counsel selected 21 boxes of documents for duplication. Petitioners were provided copies of the duplicated documents.
On July 19, 1996, in a letter responding to petitioners' mediation proposal, Republic's counsel attached a copy of an October 5, 1994 letter from petitioners' counsel to Balfour Beatty containing a preliminary analysis of the litigation. The letter indicated that Republic sent a copy of the letter to an unknown third party. Alerted that a possible inadvertent disclosure of privileged documents had occurred, petitioners' counsel reviewed the twenty-one boxes of documents copied by respondents. Counsel discovered *278 that two files containing twenty-three privileged documents had been disclosed and were among the copied documents. These documents were not listed on the privilege log.
Petitioners promptly requested that the documents be returned. The requests were refused. Thereafter, respondents, over petitioners' objections, introduced the documents at depositions and attached them as exhibits. Petitioners and Balfour Beatty filed a motion seeking an order directing the return of the documents, the retrieval of all disseminated copies, the removal of the documents as deposition exhibits, and that the court prohibit the further use or dissemination of the documents. Petitioners and Balfour Beatty asserted that the documents were privileged under section 90.502, Florida Statutes (1995), as they contain communications between the lawyers and their clients regarding the subject litigation. Upon respondents' requests for further documents, petitioners and Balfour Beatty also filed motions for protection against attempts to obtain further documents. The court heard both motions at the same time. Respondents argued that the documents were not privileged and that disclosure was not inadvertent. The order denying the motions made no specific findings.
The issue in this case is whether the inadvertent disclosure of attorney-client privileged documents[2] constituted a waiver of that privilege.[3] Section 90.502(1)(c), Florida Statutes (1995), provides that an attorneyclient communication is confidential if it is not intended to be disclosed to third parties. Florida law recognizes that the waiver of a privilege "imports the intentional relinquishment of a known right." Prieto v. Union Am. Ins. Co., 673 So.2d 521, 523 (Fla. 3d DCA 1996). "Inadvertent production is the antithesis of that concept." Kusch, 645 So.2d at 1039 (Stevenson, J., concurring in part, dissenting in part). Hence, one cannot be deemed to have waived a privilege upon the inadvertent production of documents. Cf. Stevenson v. Stevenson, 661 So.2d 367 (Fla. 4th DCA 1995)(secretary's confirmation to opposing counsel, pursuant to agreement, that documents were signed constitutes purposeful waiver of privilege); Hamilton v. Hamilton Steel Corp., 409 So.2d 1111 (Fla. 4th DCA 1982)(privilege waived when counsel for codefendants announced settlement in court once clients dispute terms of settlement among themselves). Section 90.507, Florida Statutes (1995), codifies this precept by specifying that voluntary disclosure by the holder of the privilege will waive the privilege. The consideration underlying this statute is the well-settled notion that the privilege is held by the client, and protects the client. See Kusch, 645 So.2d at 1040 (Stevenson, J., concurring in part, dissenting in part).
Courts have followed three approaches to determine whether there has been a waiver of a privilege. The traditional rule addressing inadvertent disclosure of privileged materialsthe Wigmore "strict responsibility doctrine"provides that any disclosure of the privileged material waives the privilege. See Georgetown Manor, Inc. v. Ethan Allen, Inc., 753 F.Supp. 936 (S.D.Fla.1991); Ray v. Cutter Laboratories, 746 F.Supp. 86 (M.D.Fla.1990); Hartford Fire Ins. Co. v. Garvey, 109 F.R.D. 323 (N.D.Cal.1985). Other courts have applied the rule that "mere inadvertent production by the attorney does not waive the client's privilege." Georgetown Manor, Inc., 753 F.Supp. at 939, and cases cited therein. Under the "majority rule" or the "relevant circumstances test," a court determines whether an inadvertent production amounts to a waiver of the privilege by weighing the following factors:

*279 (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error.
United States v. Pepper's Steel & Alloys, Inc., 742 F.Supp. 641, 643 (S.D.Fla.1990). Accord Hartford Fire Ins. Co.; Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103 (S.D.N.Y.1985) and cases cited therein. Believing the better-reasoned rule to be the "relevant circumstances test," and having applied those factors, we conclude that petitioners did not waive the privilege.
Petitioners have demonstrated that they took reasonable precautions to prevent inadvertent disclosures. A lawyer and paralegal were given the task of reviewing the documents that were to be produced before the deposition and the production. This process took two days to complete. Of the voluminous production undertaken, respondents chose 21 boxes to copy of which only 23 documents, in two folders, were inadvertently produced. Moreover, petitioners acted promptly upon discovering the inadvertent disclosure to request return of the documents and restrict further dissemination of the documents. The scope of the discovery in this case was rather voluminous, and the disclosure was very small by comparison. "Mistakes of this type are likely to occur in cases with voluminous discovery." Pepper's Steel & Alloys, Inc., 742 F.Supp. at 645.
We are not persuaded by respondents' argument that petitioners took no steps after production to review the documents respondents copied. Respondents have strenuously opposed petitioners' attempts to regain possession of the documents. There is no reason to believe that respondents would have returned the privileged documents had such a review and request taken place earlier.[4]
Given the overall circumstances of this case, overriding fairness considerations weigh in favor of prohibiting respondents' use of the inadvertently received privileged documents. Respondents could not have been oblivious to the privileged nature of the documents since some of them bear attorney's letterhead and are, in fact, marked as "confidential." Although the advantage to respondents from receipt of privileged documents is so great that it has been considered justification to recuse attorneys involved in other cases, see General Accident Ins. Co.; Kusch, that relief is unavailable because it was not requested below.
Upon weighing these factors, we conclude that petitioners were not negligent in attempting to protect the privileged documents. Moreover, we remind counsel of the well-justified dictate that "[a]n attorney who receives confidential documents of an adversary as a result of an inadvertent release is ethically obligated to promptly notify the sender of the attorney's receipt of the documents." The Florida Bar Comm. on Professional Ethics, Op. 93-3 (Feb. 1, 1994). Accord ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92-368 (1992). The scenario presented in this case is only one of the many situations lawyers face in the daily practice of law that should be "resolved through the exercise of sensitive professional and moral judgment...." ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92-368 (1992). As the court noted in Pepper's Steel & Alloys, Inc., "at best these situations are resolved amicably, by counsel returning documents which are obviously privileged and inadvertently produced. It is unfortunate that such could not be the case here and that the Court was forced to expend a great deal of time on this relatively minor matter." Pepper's Steel & Alloys, Inc., 742 F.Supp. at 645.
Based on the foregoing, we grant certiorari and quash the order denying petitioners' motions. We remand this cause with instructions to enter an order requiring the return of all copies of the privileged documents outlined in petitioners' motion before the trial court, including copies disseminated *280 by respondents to third parties, striking the use of the documents for any purpose, and forbidding respondents any further use of, reference to, or reliance on the privileged documents.
Certiorari granted and order quashed.
NOTES
[1] Lisa Daly and Republic shall be referred to collectively as "respondents."
[2] We find no merit in respondent's argument that the documents are not privileged.
[3] Florida's inadvertent document disclosure cases do not assist our analysis of the issues presented here: two of those cases addressed disqualification of the attorney based on the unfair tactical advantage gained from the disclosure, a remedy not requested by petitioners herein, see General Accident Ins. Co.; Kusch v. Ballard, 645 So.2d 1035 (Fla. 4th DCA 1994)(Glickstein, J., concurring); and in the third case, disclosure of the documents was contested on the basis of relevance, not on the basis of privilege. See St. Paul Fire & Marine Ins. Co. v. Welsh, 501 So.2d 54 (Fla. 4th DCA 1987).
[4] Additionally, respondents' argument that the documents are not privileged because they disclose fraud is not persuasive. Respondents have not shown fraud on the face of the documents, nor did the trial court so find. Cf. Kneale v. Williams, 158 Fla. 811, 30 So.2d 284 (Fla. 1947).