WARNER, J.
 

 Petitioner, Nova Southeastern University, Inc., seeks review of an order denying its motion for protective order asserting an attorney-client privilege claim as to a letter faxed from Nova’s counsel to Nova, which respondent read and copied after discovering it in the fax machine. We grant the petition, concluding that the court did not apply the correct law in evaluating the privilege claim. We remand for further proceedings on the issue.
 

 Respondent, Patricia Jacobson, was an Associate Director at the University School Middle School of Nova. Nova terminated her employment in 2005 for failure to comply with an earlier written final warning and for negligence and inefficiency, as well as other grounds. Jacobson sued Nova in 2007, alleging that she was terminated in a discriminatory manner on the basis of a disability in violation of the Florida Civil Rights Act, section 760.01, Florida Statutes, and that her termination was retaliatory and thus violative of the Florida Whistleblower Act, section 448.101, Florida Statutes. She alleged that Nova had commenced a course of conduct to create a record sufficient to document its desire to terminate her.
 

 Jacobson was being deposed on February 13, 2008, when she testified that in June 2005 she was at the fax machine at the middle school receiving some papers on an insurance claim for her son. Mixed in with some insurance company papers was a letter from Nova’s law firm to the head master of the school, the human resources department and the director of the middle school. She read the letter, which stated that the university “did not have enough performance issues to fire me, and that it would have to be a business decision whether I was going to remain an employee of NSU.” Counsel for Nova
 
 [1]
 
 said at the deposition that he was recording his objection to the letter as attorney-client privilege, noting that “it was obviously communicated accidentally.” No letter was produced at the time of the deposition.
 

 About ten days later during depositions of Dr. Chermak and Dr. Blinder, two persons copied on the attorney-client letter, each was asked about the letter. Counsel objected to any questions about it on the grounds of attorney-client privilege.
 

 Nova moved for a protective order in May 2008 to prevent Jacobson from referring to the letter, because it was protected by attorney-client privilege. At the time of the filing of the motion, Nova did not know that Jacobson had retained a copy of it. Because of various reasons, including the recusal of the original trial judge, trop
 
 *85
 
 ical storm Fay, and illness of counsel, the motion was not heard until January 2009. It does not appear that the letter was referenced or used in the proceedings subsequent to the filing of the motion for protective order.
 

 At the hearing, Nova filed affidavits from each of the persons to whom the letter was sent, indicating that they did not intend for third persons to see the communication. Further underscoring the letter’s confidentiality, counsel produced a cover sheet which had accompanied the faxed letter, which stated that the attached communication was protected by attorney-client privilege. Counsel told the court that he did not know whether Jacobson had made a copy of the letter, but sought to prohibit her from using its contents in any manner. If Jacobson had retained a copy, he demanded that it be returned to Nova.
 

 Jacobson’s attorney admitted that he had a copy of the letter provided to him by Jacobson. He maintained that he had used the letter since “day one” to construct his strategy in the case. He claimed it would be unfair to prevent them from using it at this juncture because it showed that Nova was being untruthful about its reasons for terminating Jacobson.
 

 The court applied the five-factor test outlined in
 
 General Motors Corp. v. McGee,
 
 837 So.2d 1010, 1040 (Fla. 4th DCA 2002), to determine whether inadvertent disclosure of privileged material waives the privilege. Those criteria are: 1) the reasonableness of the precautions taken to prevent inadvertent disclosure; 2) the number of inadvertent disclosures; 3) the extent of the disclosure; 4) the delay in measures taken to rectify the inadvertent disclosures; and 5) whether overriding interests of justice will be served by relieving the party of its error.
 

 After hearing argument, the court addressed the five factors. It thought that the reasonableness of the precautions against disclosure, “is a bit gray there. Where it is sent to a public fax machine with simply a notice on the cover letter becomes a little bit gray.” Otherwise, the court found it to be protected by the attorney-client privilege. The court noted that only one disclosure had occurred. Where the court had the most difficult time, which it stated was “two-fold huge problems,” was in the delay from the deposition to the filing of the motion and the delay between the filing of the motion and the hearing. The court stated that Nova had unduly delayed taking corrective measures, because it had not made a motion to the court immediately after Jacobson mentioned the letter at the deposition, even though Nova’s attorney pointed out that he had objected to every reference to the letter at the depositions, and that the delay in securing a hearing on the motions was due to several factors. As to the overriding interests of justice, the court was impressed that Jacobson had built her entire case strategy around the letter to prove that the school had made a determination to fire Jacobson when it had no grounds to do so and merely developed a “paper trail” after being told by its lawyers that it had insufficient grounds to terminate her. The trial court ultimately entered a written order determining that the letter was not protected by attorney-client privilege, denying the motion.
 

 Certiorari lies from an order denying the return of privileged documents inadvertently disclosed.
 
 See Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Decor, Inc.,
 
 698 So.2d 276, 278-79 (Fla. 3d DCA 1997). Permitting the opposing party to use such documents may result in prejudice which cannot be fully rectified upon appeal from a final judgment.
 
 See id.; see
 
 
 *86
 

 also Gen. Accident Ins. Co. v. Borg-Warner Acceptance Corp.,
 
 483 So.2d 505 (Fla. 4th DCA 1986).
 

 As we said in
 
 BNP Paribas v. Wynne,
 
 967 So.2d 1065, 1067 (Fla. 4th DCA 2007), “[t]he attorney-client privilege is the oldest confidential communication at common law and ... is ‘traditionally deemed worthy of maximum legal protection.’ ” (citation omitted). The privilege is codified and protects confidential communications:
 

 (c) A communication between lawyer and client is “confidential” if it is not intended to be disclosed to third persons other than:
 

 (1) Those to whom disclosure is in furtherance of the rendition of legal services to the client.
 

 (2) Those reasonably necessary for the transmission of the communication.
 

 § 90.502(l)(e), Fla. Stat. (2008). The privilege belongs to the client,
 
 see Neu v. Miami Herald Pub. Co.,
 
 462 So.2d 821, 825 (Fla.1985), and may be claimed by the client or the lawyer on behalf of the client.
 

 Florida courts do not apply a strict rule that counsel’s inadvertent production alone waives the attorney-client privilege. Instead, courts consider the following factors in determining whether the privilege has been waived:
 

 (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;
 

 (2) the number of inadvertent disclosures;
 

 (3) the extent of the disclosure;
 

 (4) any delay and measures taken to rectify the disclosures; and
 

 (5) whether the overriding interests of justice would be served by relieving a party of its error.
 

 Abamar,
 
 698 So.2d at 278-79. This “relevant circumstances test” is the “better-reasoned rule,” in contrast to the rule of some jurisdictions in which mere disclosure is a strict and automatic waiver of privilege.
 
 See id.; see also Lightbourne v. McCollum,
 
 969 So.2d 326, 333 (Fla.2007) (citing
 
 Abamar
 
 with approval);
 
 McGee,
 
 837 So.2d at 1040-41 (applying relevant circumstances test).
 

 The relevant circumstances analysis is most often applied in cases where privileged documents have been sent to opposing counsel as part of discovery.
 
 See, e.g., Abamar,
 
 698 So.2d at 278-79;
 
 McGee,
 
 837 So.2d at 1040-41. However, the line of cases represented by
 
 Abamar
 
 and
 
 McGee
 
 involved one party intentionally sending the documents to a third person (the lawyer for the other party) but unintentionally including privileged material. In this case, the lawyer sent the letter to the client, not a third person. That letter was intercepted by a third person to whom it was not addressed.
 

 Closer to these facts are those cases involving overheard conversations, where the client knew or should have known that the conversation was overheard by a third person.
 
 See Mobley v. State,
 
 409 So.2d 1031 (Fla.1982). In such cases, the courts have held that where the communication is made in the presence of others, it does not evince an intent to keep the conversation confidential, and the privilege is lost.
 
 See also Proffitt v. State,
 
 315 So.2d 461 (Fla.1975), aff
 
 'd by Proffitt v. Florida,
 
 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976);
 
 Black v. State,
 
 920 So.2d 668 (Fla. 5th DCA 2006). Nevertheless, the fact determination in the overheard conversation cases is similar to the first step of the
 
 Abamar/McGee
 
 inquiry regarding the reasonableness of the precautions to prevent inadvertent disclosure. Therefore, despite the factual difference, we apply the relevant circumstances test.
 

 The court did not make a determination regarding the first factor of the reasonable
 
 *87
 
 precautions to prevent inadvertent disclosure. The court found the sending by fax machine a “gray area.” The fax machine to which the letter was sent was a machine used by at least some of the teaching staff. In the depositions, one person testified that anyone could use the machine, but one of the letter’s recipients testified that teachers were supposed to have the secretary do the faxing for them. We have found no case deciding this issue. In
 
 Chase v. City of Portsmouth,
 
 236 F.R.D. 263, 268 (E.D.Va.2006), in determining whether reasonable precautions were taken to maintain confidentiality of an attorney-client communication, the court noted that although fax and e-mail messages are entitled to protection, the fact that the client’s husband and daughter had access to the fax machine “shows that third parties could potentially intei’cept such communications when they are not sent to a properly monitored machine.” The court did not, however, deny the protection to the privileged communication on that ground. Moreover, we are not sure of the persuasiveness of this comment for Florida attorney-client privilege law because, contrary to Florida law, “[t]he attorney-client privilege is not favored in the federal
 
 courts.Id.
 
 at 267.
 

 In its application of the five-factor test, the trial court considered that Nova’s delay in filing its motion for protective order and obtaining a hearing on the issue constituted the most important factor showing a waiver by inadvertent disclosure. The court opined that Nova waited too long in filing its motion for protective order some three months after Jacobson’s deposition. Even more important to the court was the time from the filing of the motion to the actual hearing on it. However, the court completely ignored the fact that Nova’s counsel had objected to every question asked regarding the letter and asserted attorney-client privilege.
 

 Where the party who inadvertently produced the documents objects or demands return of the documents as soon as the disclosure is discovered, the party has not unduly delayed seeking measures to rectify the inadvertent disclosure.
 
 Aba-ntar
 
 is factually similar to this case. There, attorney-client privileged documents were inadvertently included in response to a request to produce. The attorney for Abamar, the petitioner, promptly requested return of the documents when their disclosure was discovered. The respondents refused. The respondents introduced the documents and attached them as exhibits at several depositions. The petitioners then filed a motion directing the return of the documents on the grounds of attorney-client privilege. The trial court denied their return. The Third District granted certiorari and ordered the return of the documents. Applying the five-part test, the court concluded that the petitioners were not negligent in attempting to protect the privileged documents. As soon as the attorney discovered that he had inadvertently sent privileged documents, he asked for their return. Whenever the documents were referred to at depositions, an objection was lodged.
 

 Thus,
 
 Abamar
 
 found that raising the objection at the earliest opportunity was sufficient to show no delay. Just as in this case, a motion for protective order was not filed when the disclosure was first discovered but after several depositions where the documents were referred to. Similarly, in
 
 Jenney v. Airdata Wiman, Inc.,
 
 846 So.2d 664 (Fla. 2d DCA 2003), the court held that where an objection was interposed in depositions as soon as the confidential nature of the communication became apparent, the attorney-client privilege was not waived.
 
 See also United States v. Pepper’s Steel & Alloys, Inc.,
 
 742 F.Supp. 641 (S.D.Fla.1990) (raising objec
 
 *88
 
 tion at deposition as to disclosed documents preserved issue). These cases show that it is the assertion of the privilege at the earliest time through objection or motion which is the important measure in evaluating efforts to rectify the disclosure. It is not the delay in securing hearing time. In failing to recognize that the timely assertion of an objection constituted an appropriate measure to rectify the inadvertent disclosure, the court departed from the essential requirements of law.
 

 Furthermore, Nova’s trial counsel did not know that Jacobson had a copy of the letter at the time the depositions proceeded. Nova’s attorney could not have moved to exclude what he did not know was in possession of his opponent. In fact, Jacobson did not reveal that she had a copy of the letter until after the motion for protective order was filed. Nova’s timely objection showed that it did not delay in taking appropriate measures to prevent further use of the letter’s contents. And when Nova discovered at the hearing that Jacobson had a copy of the letter, Nova asked for its return.
 

 The court also considered the fifth factor of the overriding interests of justice in concluding that it would be unfair to prevent use of the letter, because Jacobson’s attorney had built his entire case around the privileged communication. While it may be that the attorney developed the case strategy based upon the letter’s contents, it is not also true that the letter itself is essential to pursuing that strategy. Nothing alleged in the complaint need only be proved by use of the letter’s contents. What Jacobson’s attorney wishes to use the letter for is to prove improper motive and impeach the credibility of several of Nova’s witnesses. As the court said in
 
 Jenney,
 
 permitting waiver of the attorney-client privilege simply because a party’s credibility could be impeached with use of those communications “would essentially create a ‘credibility exception’ to the attorney-client privilege that would swallow the entire rule.”
 
 Id.
 
 at 668. We agree with the Second District that this is an improper reason to waive the privilege.
 
 See also Cuillo v. Cuillo,
 
 621 So.2d 460 (Fla. 4th DCA 1993).
 

 The overriding interests of justice support returning the letter to Nova, if it is determined that the attorney-client privilege was not waived by the method of its delivery by fax. Jacobson’s attorney clearly had to know that the letter was intended to be a confidential communication in that it provided legal analysis regarding the Nova/Jacobson employment relationship. The Rules of Professional Responsibility require that he notify the other attorney of this inadvertent disclosure.
 
 See
 
 Fla. R. Prof. Conduct 44.4(b) (“A lawyer who receives a document relating to the representation of the lawyer’s client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender.”). Instead of following the rule, this attorney held onto the letter for years. The interests of justice require that the Rules of Professional Responsibility be honored.
 

 Because the trial court departed from the essential requirements of law in evaluating the relevance test factors for waiver of attorney-client privilege based upon inadvertent disclosure, we remand for the trial court to conduct a new hearing on the issue.
 

 At the hearing, the court should reanalyze all five factors, consistent with our rulings in this opinion. In particular, the court must make further findings regarding the first factor, namely what measures were taken to protect against inadvertent disclosure. The inquiry must focus on whether the
 
 client
 
 knew or should have known that the letter sent by the attorney would be viewed by third parties. Whether the use of the fax machine to send the
 
 *89
 
 communication negates a claim that the matter was sent in confidence requires a fact-intensive determination. Such an inquiry might include, but would not be limited to: whether the client authorized the attorney to use that fax machine to send confidential letters; the extent to which the fax machine was used generally by the staff without assistance from the secretaries; the extent to which the intended recipients knew that the fax was used by other personnel; and finally whether the letter was accompanied by an attorney-client privilege notice, a fact which Jacobson denies in her affidavit but is undermined by other documents produced in the case.
 
 [2]
 

 For the foregoing reasons, we grant the petition and quash the order under review, with directions to conduct further proceedings consistent with this opinion.
 

 STEVENSON and MAY, JJ., concur.
 

 [1]
 

 . The lawyer representing Nova at the deposition is not the same lawyer as the one who authored the opinion letter.
 

 [2]
 

 . Nova has also sought the disqualification of Jacobson's counsel. Such relief may be appropriate,
 
 see General Accident Insurance Company v. Borg-Warner Acceptance Corporation,
 
 483 So.2d 505 (Fla. 4th DCA 1986), depending upon the results of the analysis required by this opinion.