729 So.2d 508 (1999)
5500 NORTH CORPORATION d/b/a Days Inn, Oceanfront, Petitioner,
v.
Deborah WILLIS, Respondent.
No. 98-2425.
District Court of Appeal of Florida, Fifth District.
April 9, 1999.
*509 Richard E. Ramsey and Michael R. D'Lugo, of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Orlando, for Petitioner.
Kevin Patrick Bailey, Orlando, for Respondent.
COBB, J.
The defendant/petitioner, 5500 North Corporation, petitions for a writ of certiorari asking this court to quash the trial judge's order which disqualified its trial counsel, the firm of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., (Wicker, Smith), from representing it because of the trial court's perception of an invasion of privileged material. This occurred when an associate from Wicker, Smith, one Kevin Mercer, deposed an investigator for the plaintiff and questioned him about matters involving the work product of plaintiffs attorney, one Kevin Bailey, and also about communications from the plaintiff herself.
The problem arose following an order by the trial court to the effect that all discovery "shall be completed prior to July 24, 1998 unless counsel have agreed to extend the time for said completion." Apparently the attorneys mutually agreed that discovery could extend through the date of July 24, which was a Friday. On the preceding Friday, July 17, 1998, Bailey served a notice by regular mail to add some twelve witnesses to the witness list, one of them being his own investigator, Pete Hildreth.[1] On Tuesday, July 21, 1998, Mercer noticed his intent to depose these additional witnesses at various times throughout the days of July 23 and July 24, 1998. On Wednesday, July 22, Bailey filed a motion for protective order stating that he was unavailable; he further stated in the motion that it was his plan "to complete discovery of late added witnesses on July 28 and 29, as per the Court's instructions at the Pre-Trial Conference (i.e., if, as has happened, Defendant refused to produce any of its late added witnesses for deposition)."[2]
On July 23 Mercer responded to the motion for protective order noting that the discovery cutoff date was July 24, 1998and that it had not been extended by the trial court. The response also noted that the trial court had stated at the pretrial conference *510 that the plaintiff should subpoena her late added witnesses for deposition and the defense need not produce those witnesses. The witnesses in question, according to the response, were independent witnesses not under the control of the defense. The response further asserted that the defense was proceeding with the depositions it had set for July 24, 1998, "as plaintiff's counsel has made no attempt to make himself available for depositions, nor has plaintiff's counsel attempted to have this Motion (for protective order) heard by the Court prior to the taking of the depositions as noticed."
Consequently, the Hildreth deposition proceeded on July 24. Bailey did not attend. Hildreth was questioned at the deposition by Mercer, who began preliminarily by stating that the deposition was scheduled on short notice because there was a discovery cutoff on July 24. Mercer further stated that Bailey had filed a protective motion regarding the deposition but did not get a court order thereon, nor did he contact Mercer's office to try to coordinate a hearing on the motion and apparently had elected not to attend the deposition.
Mercer thereafter asked Hildreth questions as to why he was named on the witness list. The investigator said he didn't know but it might have something to do "with the fellow over in Cocoa ... who signed the statement that I took over for him, a former maintenance man." When asked why he was named with regard to that person, Hildreth said he thought he should not be answering something he would only be guessing about and also questioned whether he was being asked about matters which were work product. Mercer responded that any work product privilege "has been waived because Mr. Bailey listed you on his witness list. You are correct that typically what an investigator does is work product." Mercer thereafter asked Hildreth what he knew about various witnesses and as to various aspects of Bailey's trial preparation.
On August 3, 1998 (which was the trial date), Bailey filed a motion for sanctions against Mercer. The motion stated that Hildreth was "purposely misled" by Mercer's statement that the work product privilege was waived by Hildreth being listed as a witness. Bailey characterized this conduct as "Rambo litigation" and claimed the deposition was a "bad faith invasion" of the work product privilege to try and have Bailey's mental impressions and theories of the case exposed. The motion then recited the questions asked as to what the investigator knew about the testimony of various witnesses in the case and as to what he had been told by counsel about the incident at issue.
On that same day, the trial judge held a hearing on the motion for sanctions. Bailey argued that his case had been hurt because "we have effectively gained defense counsel as co-counsel. He has been inside our case, he's been inside our investigator's head...." The trial judge questioned Mercer as to why he thought it was proper for him to question the investigator, and was obviously upset with Mercer's conduct. At the conclusion of the hearing the trial judge entered an order with the following findings:
A. Counsel for the Defendant, in the course of deposing Plaintiff's private investigator on July 24, 1998, made a false statement of law in telling the witness that the work product privilege had been waived and, via that misrepresentation of the law, took full advantage of questioning the witness on privileged matters to such an extent that the concept of fundamental fairness was violated. Plaintiffs counsel, having filed a Motion for Protective Order on the basis of unavailability, was not present at the deposition.
B. As a result of defense counsel's violations of the work product privilege and the attorney-client privilege, on dozens of occasions in the course of the deposition, Plaintiff incurred undue prejudice as regards a fair trial.
C. Defense counsel's conduct evinced deliberate callousness for the privileges involved, and the essential aspects of fundamental fairness, and amounted to willful misconduct.
D. Defense counsel's conduct is governed by the Rules Regulating the Florida Bar, Rules of Professional Conduct, including Rule 4-4.1, that prohibits *511 the making of a false statement of material fact or law to a third person in the course of representing a client. This surely encompasses defense counsel's major misrepresentation of law in advising an investigator/witness that the reluctant witness may proceed to answer questions because his concerns about the work product privilege were incorrect in that the privilege had been waived, as defense counsel incorrectly advised the witness and misled him into prejudicial disclosures.
E. In the subsequent deposition of the opposing party's private investigator in this premises liability matter, defense counsel learned which witnesses Plaintiff planned to call at trial, which witnesses Plaintiff did not plan to call, which witnesses Plaintiff considered important, and which were considered unimportant. Defense counsel discerned which witnesses Plaintiff planned to use on which issues and which witnesses would be used on other issues. Further questioning established which witnesses could be used without fear of impeachment or contradictory statement by Plaintiffs counsel and even which witnesses had been subjected to criminal background checks and which ones would be free of such concern if called by Defendant. Defense counsel learned Plaintiff's summary of certain witness testimony, and even the number of witnesses located by Plaintiff and whether certain witnesses were available for live trial testimony and which ones were safe from character evidence impeachment. All this and more amounted to a tremendous advantage to the Defendant and a tremendous amount of prejudice to the Plaintiff.
F. Defense counsel's questioning included inquiries as to the ability to get witnesses to Court, the identifying of witnesses who may be unavailable or out of town, and generally going through each of the parties' witness lists. He pressed the investigator witness for the result of any background checks Plaintiff may have obtained on each of them.
G. The violations of ethics that occurred here was egregious.
H. Defense counsel also invaded the attorney-client privilege. The private investigator was asked what he had talked to the Plaintiff about; what he had learned from the Plaintiff; whether the Plaintiff gave him a statement; and more specific questions about what the Plaintiff had told him about specific liability issues.
I. Because of the misrepresentation of law by defense counsel, the witness testified to many things he should not have testified to. As a result of the violations of the work product and attorney-client privileges, a tremendous advantage was obtained by the Defendant. Manifest prejudice obtained to Plaintiffs ability to present her case.
J. In the course of argument at the hearing in this matter, defense counsel was advised of the alternate possible remedies of disqualification of defense counsel and his firm, as opposed to the striking of Defendant's pleadings on liability and proceeding to trial on damages alone. Defense counsel informed the Court that their client elected to have defense counsel disqualified rather than to incur the striking of any pleadings.
Based upon his finding that a work product violation had occurred, the judge disqualified Wicker, Smith from the case and ordered them not to communicate any information they obtained from Hildreth. The trial judge also ordered Mercer and Wicker, Smith to pay attorney's fees incurred by the plaintiff for the sanctions hearing and for filing the motion and also referred the matter to the Florida Bar for consideration of any ethical violation. The trial judge rejected Wicker, Smith's reliance upon United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), finding that Nobles held that when a party lists an investigator as a witness, the work product privilege is waived with respect to "matters covered in *512 his testimony." The trial judge found that since the plaintiff had not presented any testimony at the time of the deposition, the privilege was not waived and therefore concluded that Bailey might have listed Hildreth to testify only as to nonprivileged matters.
In Nobles, defense counsel hired a private investigator after the crime, a bank robbery, had taken place. The investigator interviewed two witnesses, a bank teller and customer, both of whom were present during the robbery, and preserved the essence of those conversations in a written report. At trial, the witnesses testified for the prosecution. Defense counsel relied on the investigator's report during their cross-examinations. Both witnesses denied having made statements to the investigator that cast doubt on their trial testimony. The Supreme Court indicated that up to that point no waiver of the work-product privilege was made. Nobles 95 S.Ct. 2160, 422 U.S. at 239. However, defense counsel then sought to put the investigator on the stand and contrast his recollection of the contested statements with the recollections of the two witnesses. The trial court ruled that a copy of the entire portion of the investigator's report dealing with the statements would have to be submitted to the prosecution for inspection at the completion of the investigator's testimony. The defense chose not to disclose the report and suffered the consequence of not being allowed to have the investigator testify. The Supreme Court agreed with the trial court's ruling. The Court indicated that defendant, "by electing to present the investigator as a witness, waived the [work-product] privilege with respect to matters covered in his testimony." Id., 95 S.Ct. 2160, 422 U.S. at 239.
In American Motors Corp. v. Ellis, 403 So.2d 459 (Fla. 5th DCA 1981), review denied, 415 So.2d 1359 (Fla.1982), this court relied in part upon Dodson v. Persell, 390 So.2d 704 (Fla.1980), wherein the Florida Supreme Court held that the contents of surveillance films and materials are subject to discovery in every instance where they are intended to be presented at trial, either for substantive, corroborative, or impeachment purposes. Thus, if the materials are only to aid counsel in trying the case, they are "work product," but any "work product" privilege that existed ceases once the materials or testimony are intended for trial use. See also Alamo Rent-A-Car v. Loomis, 432 So.2d 746 (Fla. 4th DCA 1983) (trial court abused its discretion in ordering defendant to produce the investigator's surveillance report, which defendant did not intend to use in evidence); Wackenhut Corp. v. Crant-Heisz Enters., Inc., 451 So.2d 900 (Fla. 2d DCA 1984) (if an expert has been hired to conduct an investigation in anticipation of litigation, and is not going to testify at trial, his reports and memoranda constitute materials compiled in preparation for trial).
Since Bailey listed Hildreth as a witness, it was appropriate for Mercer to discover and inquire into his intended testimony. The Nobles opinion was not concerned with a pretrial waiver of privilege and prospective testimony as we are in the instant case. The trial judge was in error in reading Nobles as precluding pretrial discovery in regard to a listed witness's intended trial testimony, whether that testimony covers privileged or nonprivileged matter.
On the other hand, we conclude that the legal advice that Mercer gave Hildreth was misleading, whether or not so intendedat least in respect to absolutely privileged matters. The failure of the plaintiff below to make a timely objection or a motion to limit discovery in regard to Hildreth's testimony did not constitute a waiver of a work product privilege as to matters clearly outside the scope of permissible discovery. See Insurance Company of North America v. Noya, 398 So.2d 836 (Fla. 5th DCA 1981). An attorney's mental impressions, conclusions, opinions or theories concerning the client's case are opinion work product and are absolutely privileged. See State v. Rabin, 495 So.2d 257 (Fla. 3d DCA 1986). This absolute privilege is expressly recognized in the Florida Rules of Civil Procedure.[3]
*513 We believe that Bailey substantially contributed to this problem by his contumacious conduct: although objecting to the scheduled discovery deposition of Hildreth, Bailey failed to obtain a protective order and failed to attend (or have some other attorney attend) the deposition; he did not reveal to Hildreth why the latter was listed as a witness nor did he instruct Hildreth as to any restrictions in regard to the latter's testimony at the imminent deposition; and he made no effort to cooperate with opposing counsel in scheduling the depositions precipitated by his own last minute motion to add additional witnesses. We therefore disagree with the award of any fees to Bailey.
The core question raised by the instant petition is whether the improper questioning of Hildreth by Mercer (i.e., that which was directed toward matters absolutely privileged) resulted in defense counsel gaining an unfair advantage over the plaintiff which could only be alleviated by removal of defense counsel from the case. See Esquire Care, Inc. v. Maguire, 532 So.2d 740 (Fla. 2d DCA 1988). Although the trial judge expounds at some length in his factual findings on the improper questions propounded by Mercer, our reading of the deposition leads us to conclude that, given Hildreth's limited knowledge of the case, Mercer acquired no useful information from him that constituted absolutely privileged matter i.e., the mental impressions, conclusions, opinions or theories of Bailey or confidential communications emanating from Willis. Indeed, at oral argument Bailey was unable to explain, at least to the satisfaction of the appellate panel, any disadvantage he suffered as a result of Mercer's improper questions in regard to absolutely privileged matter. Information that was entitled to be shielded as work product, but was not absolutely privileged, was waived by Bailey's failure to attend the deposition and his failure to instruct Hildreth in regard to the latter's scheduled testimony. None of the information Mercer actually acquired from Hildreth was information that Mercer was not entitled to acquire through other means.
Moreover, it is difficult to perceive what beneficial facts Mercer could have discovered from Hildreth. This is not a complex case. Even Bailey refers to this action as a simple premises liability case. That appears to be an apt description. Plaintiff jumped, or was pushed, into a motel swimming pool where she stepped on a Sprite bottle and fractured her foot. The asserted negligence was that the defendant's pool was unlighted at the time, thereby preventing the plaintiff from seeing the bottle. Mercer was able to determine from the investigator that the plaintiff had indicated that the pool was unlighted when she went into it and that she then stepped on the bottle. This information revealed nothing inconsistent with plaintiff's cause of action as set out in her complaint. How, then, was it prejudicial? What "tremendous advantage" did the defense gain?
We conclude, therefore, that defense counsel did not obtain such an unfair advantage in this case as to justify their removal from the *514 case. It was sufficient in this unusual, not to say bizarre, factual scenario for the trial judge to refer this matter to the Florida Bar for consideration of any ethical violations, such referral being a matter within the discretion of the trial judge.
Finally, we observe that the circumstances of this case present a textbook example of lack of cooperation between opposing counsel.[4] We would expect more civility from Beavis and Butthead than was displayed here by Attorneys Bailey and Mercer. We commend their attention to Judge Nesbitt's opinion in Sanchez v. Sanchez, 435 So.2d 347, 349 (Fla. 3d DCA 1983):
[A] lawyer should be courteous to and accede to the reasonable requests of his opposing counsel regarding matters which will not prejudice the rights of his client. Fla. Bar Code Prof. Resp., E.C. 7-38. The proper functioning of the adversary system depends upon cooperation between lawyers and tribunals in utilizing procedures which will make the decisional process prompt and just without impinging upon the obligation of zealous representation. Fla. Bar Code Prof. Resp. E.C. 7-39.
Accordingly, we grant the petition for certiorari and quash the trial court's order of disqualification and its fee award. We remand for further proceedings consistent with this opinion.
CERTIORARI GRANTED; ORDER QUASHED; AND CAUSE REMANDED.
HARRIS, J., concurs and concurs specially, with opinion.
ANTOON, J., concurs in part, dissents in part with opinion.
HARRIS, J., concurring and concurring specially.
I agree with Judge Cobb's analysis and I concur in his opinion; I write in response to the referral to the Florida Bar.
The trial judge focused too much on the conduct of one lawyer and not enough on the action (actually inaction) of the other. This incident, and the conduct of both attorneys surrounding it, will not mark the high point of either's career; hopefully it will not tarnish either's reputation. One counsel's willful decision not to attend a properly noticed deposition of a person listed by him as one of his witnesses is of critical importance in evaluating the other counsel's actions.
The trial court was upset because it believed the defense attorney gave the witness, an investigator employed by the plaintiff, at a scheduled deposition at which plaintiffs counsel chose not to attend, "a false statement of law" relating to the work product privilege which caused the witness to divulge privileged information. And although I disagree that the statement, in the context in which it was given, was either false or misleading, I understand the judge's concern.
The investigator, listed on plaintiffs witness list without any limitation as to what his testimony would be and who professed not to know why he was listed as a witness, was asked whether he was employed to do investigative work on the subject case. He responded that he was employed to do some work. He was then asked what work he did on the case. At this point, the witness, who had no privilege of his own to assert, asked whether it was proper for him to answer because of the work product privilege. Defense counsel, not knowing why the investigator was listed as a witness but reasonably believing that plaintiffs counsel might ask questions of him at trial regarding his services as an investigator, responded that the work product privilege was waived because the investigator was named as a witness. To further advise that the waiver applied only to those matters about which the witness would testify at trial would have been nonsensical since neither the lawyer nor the witness knew what the investigator would be asked at trial. And there was no "standing objection" to questions relating to work product. Even assuming (and I do not) that a witness is permitted to invoke a lawyer's work product privilege, it must be properly invoked when the challenged question is asked. See *515 St. Paul Fire and Marine Ins. Co. v. Welsh, 501 So.2d 54 (Fla. 4th DCA 1987) (if privilege is not asserted when information is divulged, it is waived). It is not unethical, in my view, to ask questions which are subject to waivable objections. Counsel should not be required to anticipate objections or to avoid questions which might be objectionable on pain of ethical condemnation.[1]
The work product privilege had indeed been waived as to the questions propounded to the witness at the time the witness asked the question concerning the privilege because they related to testimony that could reasonably be expected to be elicited by plaintiffs counsel at trial. The scope of the inquiry of the investigator might have been limited had plaintiffs attorney indicated in the notice adding the investigator to the witness list the nature of his proposed trial testimony, but because there was no indication as to why this witness was being called, counsel was free to inquire into all aspects of the witness' possible testimony. Indeed it could be malpractice not to do so.
I agree with Judge Cobb that the trial court's conclusion that United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), limits inquiry on a pre-trial deposition to "matters covered by his testimony" cannot be right.[2] In Nobles, counsel did not decide to make the investigator a witness until the trial was underway. The court held that the defense was entitled to access to the investigator's written report (clearly work product) but only as to matters which had been covered by his testimony and which were, of course, then known. However, had the investigator been listed as a witness on a pre-trial witness list without specifying a limitation on his intended testimony, Nobles would not have been so limited. It makes no sense to give the adverse attorney notice of a witness and then prevent meaningful pre-trial discovery because the witness has not yet testified at trial.
Plaintiffs counsel's willful failure to attend a scheduled deposition of his own witness cannot be glossed over. Certainly there is no requirement that a lawyer attend all noticed depositions. The lawyer should be free to assess the deposition's importance to his case and weigh that against the time and cost of attending. However, the lawyer's decision not to attend should not affect the discovery efforts of the other parties. Had plaintiffs lawyer attended this deposition and raised the work product privilege, defense counsel could then have gone before the court to challenge the privilege based on waiver. But plaintiffs counsel's failure to attend the deposition and raise the privilege denied defense counsel this opportunity. Counsel's willful non-appearance at the deposition of his investigator should be held to say: "My investigator is your witness. Ask him anything you wish. I have no objections and I assert no privilege." The deposition should be read as though the one who elects not to attend is present. Would the court have been so upset with the questions asked concerning work product if plaintiffs counsel had been present and failed to object or claim the privilege? Why then should the court be upset when counsel chose not to attend the deposition of his investigator, knowing any inquiry might implicate the work product privilege, and thus willfully gave up the opportunity to claim the privilege?
Even assuming that the advice given by defense counsel on work product was incomplete and therefore misleading, still no ethical *516 violation has been established. The mere making of a false statement of law is not a violation of the rules of professional conduct. If that were the case, the grievance process would break with the overload. This court constantly sees "misstatements" of law (occasionally we make them); we also encounter misstatements of fact. But we assume, unless there is more than the mere misstatement or unless a pattern of conduct exists, that the misstatement was not knowingly made. Unless a lawyer knowingly makes a false statement, then under the rules no violation occurs. On at least two occasions at the hearing on this matter before the trial judge, defense counsel assured the judge that he truly believed his statement of the law was correct. The trial court herein accepted the defense lawyer's assurance that he had not knowingly made a false statement of law.[3] My review of the record suggests no knowing misrepresentation. A young lawyer was compelled to take the deposition of a late-noticed witness on the final day open for discovery. He had no knowledge as to why the witness was called, but was confronted by an inquiry from the witness concerning the work product privilege. Without the benefit of having Nobles at his fingertips, he informed the witness of the law as he believed it to be. The fact that he answered the inquiry "on the record" indicates no deceit was intended. The lawyer's conduct in this regard should not be branded unethical.
The trial court voiced no concern about plaintiff's counsel's cavalier[4] decision to ignore a scheduled deposition of his own witness. Instead, the court has, in effect, required defense counsel to represent the interest of the absent attorney by not asking questions concerning work product which could, if counsel were present, be waived or, if asserted, be challenged. Because defense counsel's statement concerning waiver of the work product privilege, under the facts of this case, was neither false nor misleading, I suggest that reference to the Florida Bar, while certainly within the trial court's prerogative, is unjustified.
ANTOON, J., concurring in part; dissenting in part.
I concur in the majority's ruling that the sanction of disqualification was not warranted by the facts presented in this case because there was no showing that the plaintiff suffered any prejudice as a result of defense counsel's violation of her attorney's work product privilege. In his thoughtful opinion, Judge Cobb summarizes the law regarding when an attorney's violation of opposing *517 counsel's work product privilege authorizes the trial court to issue a sanction disqualifying the attorney from the case. I agree that the law authorizes such a sanction where an attorney improperly obtains work product information which is outside the scope of permissible discovery and the possession of such information prejudices opposing counsel's case.
However, I do not agree with the majority that the trial court departed from the essential requirements of the law by directing defense counsel to pay the attorney's fees incurred by the plaintiff regarding this discovery violation. Therefore, I would allow that portion of the sanction order to stand. In my view, the trial court properly determined that the plaintiff should not be required to pay the legal fees incurred as a result of defense counsel's misconduct. In reaching this conclusion I am mindful of the fact that no motion for sanctions had been filed against plaintiffs counsel for his failure to appear at the scheduled deposition, as well as the general rule that "two wrongs don't make a right." The trial court's decision to award attorney's fees was a proper sanction based on the facts presented.
It is important to note that, in reaching our conclusions, the panel has had both the time and the legal resources to thoroughly examine and research this discovery violation issue; two commodities which were not available to the trial judge since he was presented with the plaintiff's motion for sanctions just as the trial was about to commence, with a jury waiting in the wings. Furthermore, although a different conclusion has been reached by this panel with regard to the propriety of issuing sanctions in this case, I write separately to point out that the trial judge, in ruling on this unusual issue, recognized his obligation to take appropriate action upon perceiving conduct which violated the Rules Regulating The Florida Bar. See Fla.Code of Jud. Conduct, Canon 3D(2). It is essential that trial judges take strong and active roles in curbing the widespread abuse of the discovery process. Ironically, Florida's liberal discovery procedure was designed to allow efficient trial preparation with minimum court involvement, yet too often discovery tools are now being used to delay, pressure, and intimidate opposing counsel thereby forcing responsible counsel to look to the trial court for relief.
NOTES
[1] Although Bailey styled this notice as a motion, it effectively amended the witness list.
[2] There is nothing in the record before us to substantiate such instructions from the trial court, and the petitioner here denies there were any such instructions. Although certain depositions had been scheduled by agreement for the following week, the attorneys had no agreement concerning discovery in regard to the 12 additional witnesses, including Hildreth, who were listed in Bailey's notice.
[3] Florida Rule of Civil Procedure 1.280(b)(3) provides:

(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative, including that party's attorney, consultant, surety, indemnitor, insurer, or agent, only upon a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing had been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of a party concerning the litigation. Without the required showing a party may obtain a copy of a statement concerning the action or its subject matter previously made by that party. Upon request without the required showing a person not a party may obtain a copy of a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for an order to obtain a copy. The provisions of rule 1.380(a)(4) apply to the award of expenses incurred as a result of making the motion. For purposes of this paragraph, a statement previously made is a written statement signed or otherwise adopted or approved by the person making it, or a stenographic, mechanical, electrical, or other recording or transcription of it that is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded. (Emphasis added).
[4] See Frost, The Topic is Civility, 71 Fla. B.J. 6 (Jan.1997); Davis, Thoughts on the "Emperor Complex," the "Scorched Earth Policy," and Lawyer Professionalism, 73 Fla. B.J. 30 (Feb. 1999).
[1] To what extent should the court require that our adversarial playing field be leveled? Is it unethical, for example, for an experienced lawyer to "take advantage" of a new lawyer by asking questions on deposition that he knows are subject to objection but believes that because of his adversary's inexperience no objection will be asserted? Suppose one lawyer is only slightly "better" than his adversary but the difference in ability is critical to the outcome of the case, should the court interpose a balance? Should there be a Rule 3.850 in civil cases? I don't pretend to know all the answers, but I hear the squeaking of the opening mechanism on Pandora's box.
[2] Thus I believe the trial judge made a "misstatement" of law. I know the misstatement was not intentional. And because law is nothing more than the majority opinion of the last court to decide the issue, if my views are not accepted on certiorari, I trust the supreme court and the JQC will realize such views, even if expressing incorrect law, are nevertheless expressed in good faith.
[3] The court indicated at the hearing on sanctions that it did not find a willful violation. The court stated: "And so you now have a witness, who based on a misrepresentationmaybe not intentionally, you know, I'll accept that maybe you didn't know what the law was. But the bottom line is that this entire deposition, all the work product given was given as a result of the witness being wrongfully told that the work product privilege had been waived. It had not." Thus, in a calm and dispassionate analysis, the court determined that the evidence did not convince it that the defense lawyer made a knowing misstatement of law but that even a negligent misstatement, assuming sufficient unfairness was shown, would nevertheless justify removing counsel from the case. Therefore, because of this analysis, the court's subsequent findings in its order removing counsel from the case are surprising at the very least. The trial court authorized plaintiff's counsel, without any specific directions, to prepare the order removing the other counsel. The relationship between counsel at this point can only be described as extremely hostile. Thus the one initially making the findings of fact and conclusions of law was not a dispassionate arbiter. It is clear from the record that the trial court did read and consider plaintiff's counsel's findings and conclusions before signing the order. But the question lingers as to whether the court, because of its earlier statement in the record, would have found "egregious" ethical violations and attorney "willful misconduct" if these findings had not first been made by plaintiff's counsel. The practice, not uncommon, of permitting opposing counsel to prepare, without specific directions, the orders or judgments of the court will always raise the specter that the trial court, instead of making the decision has, similar to an appellate court, merely determined that the record supports the findings and conclusions made by the attorney. See White v. White, 686 So.2d 762 (Fla. 5th DCA 1997).
[4] The record does not suggest that counsel's nonappearance resulted from some sudden emergency. Nor does it appear counsel merely forgot about the deposition. He applied for a protective order, did not get a hearing, and simply did not attend the deposition. Had counsel not willfully ignored the deposition, perhaps an inadvertent disclosure could be considered.