941 So.2d 404 (2006)
APPLIED DIGITAL SOLUTIONS, INC., and PDS Acquisition Corp., Petitioners,
v.
Hark VASA, H & K Vasa Family Limited Partnership, and H & K Vasa Family 2000 Limited Partnership, Respondents.
No. 4D06-461.
District Court of Appeal of Florida, Fourth District.
September 20, 2006.
Rehearing Denied December 1, 2006.
*406 Andrew M. Dector of Shapiro, Blasi, Wasserman & Gora, P.A., Boca Raton, and Jeffer, Mangels, Butler & Marmaro LLP, Los Angeles, CA, for petitioners.
Paul A. Traina and Rahul Ravipudi of Engstrom, Lipscomb & Lack, Los Angeles, CA, and Michael J. Overbeck of Michael J. Overbeck, P.A., West Palm Beach, for respondents.
WARNER, J.
Petitioners, defendants below, seek certiorari review of an order of the trial court denying their motion for disqualification of plaintiffs' counsel because of his receipt of attorney-client privileged documents. We deny the petition because the trial court found that the disclosure was inadvertent, and the individual plaintiff, Hark Vasa ("Vasa"), was effectively the "client" at the time the attorney-client privileged matters were generated, so that he would already have knowledge of their contents.
Petitioner Applied Digital Solutions, Inc., ("Applied") through its subsidiary, petitioner PDS Acquisition Corporation ("New PDS"), acquired Pacific Decision Sciences Corporation ("Old PDS") in a merger transaction pursuant to which New PDS acquired all of Old PDS's "property, rights, privileges, powers and franchises." Old PDS's shareholders, including Vasa (who was also president of Old PDS) and his family limited partnerships, received shares of stock in Applied. During the merger Old PDS was represented by a Texas law firm, Gardere & Wynne, L.L.P. ("Gardere Wynne"), and petitioners, Applied and New PDS, were represented by other counsel. The engagement letter between Gardere Wynne and Old PDS specifically provided that the firm did not represent Vasa or the other two major shareholders.
In 2004, Vasa and his family partnerships sued Applied and New PDS for the breach of several terms of the agreements relating to the merger. While the suit was pending in March 2005, more than three years after Vasa had ceased to be associated in any way with Old PDS, Vasa's attorney, Rahul Ravipudi ("Ravipudi") of Engstrom, Lipscomb & Lack, contacted one of Gardere Wynne's attorneys, Alan Perkins ("Perkins"), to obtain the entire firm file from the merger. Ravipudi told Perkins that he represented Old PDS. Perkins informed Ravipudi he would need direction from the client in writing. In a letter dated March 22, 2005, signed by Vasa as "Former President/CEO of PDSC," Vasa authorized Perkins to release his entire file to Ravipudi. In accordance with the letter, Gardere Wynne delivered its entire file to Ravipudi, without retaining a copy of what it delivered.
In response to a request to produce, Ravipudi produced several hundred pages of documents, some from Gardere Wynne's files and some not, and withheld others as privileged. Defendants also scheduled the depositions of Perkins and David Earhart ("Earhart"), the Gardere Wynne attorneys involved in the merger. The day before Perkins' deposition, Defendants served subpoenas duces tecum on Gardere Wynne to obtain all the firm's files relating to the merger. In response, Gardere Wynne discovered it had additional documents. Perkins sent Ravipudi the originals, retaining copies, because he understood he was still under the instruction to forward all Gardere Wynne's files to Ravipudi.
Over the next two days, defendants' counsel deposed Perkins and Earhart, and Ravipudi purported to represent these two *407 attorneys at their depositions. During the deposition, defendants obtained the engagement letter and learned for the first time that Gardere Wynne did not represent Vasa personally in the merger transaction. It also learned that plaintiffs' counsel had obtained possession of Gardere Wynne's files by representing his association with Old PDS. It demanded return of the documents, but Ravipudi initially refused, believing that Vasa was entitled to the documents, as he was the one who had conducted the confidential communications with the Gardere Wynne attorneys regarding the merger.
Defendants moved to disqualify Ravipudi. They claimed that because Gardere Wynne represented only Old PDS and not Vasa individually, the files of Old PDS, and all privileges pertaining to them, became the property of New PDS after the merger. Thus, Vasa was not entitled to receive any of Old PDS's privileged documents. Because Vasa and his attorney affirmatively obtained the Gardere Wynne file, which belonged to Applied and New PDS, through misleading communications, defendants argued that disqualification of Ravipudi was the appropriate remedy. He had received his adversaries' privileged documents, he was aware they were privileged (some were marked "confidential"), and he had failed to return them or otherwise rectify the unfair tactical advantage he obtained from the disclosure.
Vasa responded, noting that the defendants knew that Ravipudi was obtaining documents from Gardere Wynne and that Ravipudi believed that the documents were in Vasa's control for discovery purposes, as Vasa was president of Old PDS during the merger transaction. Further, all attorney-client communications between Gardere Wynne and Old PDS were with Vasa. Thus, no unfair advantage had been obtained by Vasa, because he was a party to all privileged communications at the time they were made.
In a four-page order, the trial court granted the motion to the extent of compelling the return of the privileged materials, ordering plaintiffs to return them forthwith, to destroy all copies, and to make no use whatsoever of any of the materials inadvertently turned over to plaintiffs in this matter absent further court order. However, in view of the principle that the disqualification of a party's lawyer in a civil case is an unusual remedy that must be employed only in limited circumstances, the court denied that relief. It determined that any disclosure to plaintiffs' counsel was due to a mutual mistake of fact as to who Gardere Wynne represented and thus was inadvertent. Moreover, any disclosure likely was not harmful in light of the fact that Vasa was the controlling shareholder of the selling entity and had previous knowledge of any information that might be contained in the Gardere Wynne file anyway. The mere possibility of a tactical advantage could not result in the drastic remedy of disqualification. From this order defendants petition for relief.
As we most recently said in Alexander v. Tandem Staffing Solutions, Inc., 881 So.2d 607, 608-09 (Fla. 4th DCA 2004):
"Disqualification of a party's chosen counsel is an extraordinary remedy and should only be resorted to sparingly." Singer Island, Ltd. v. Budget Constr. Co., 714 So.2d 651, 652 (Fla. 4th DCA 1998); Vick v. Bailey, 777 So.2d 1005, 1007 (Fla. 2d DCA 2000). Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes. See Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir. *408 1983); Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir.1988) (observing that "the ability to deny one's opponent the services of capable counsel, is a potent weapon"). Confronted with a motion to disqualify, a court must be sensitive to the competing interests of requiring an attorney's professional conduct and preserving client confidences and, on the other hand, permitting a party to hire the counsel of choice.
The standard of review for orders entered on motions to disqualify counsel is that of an abuse of discretion. See Stewart v. Bee-Dee Neon & Signs, Inc., 751 So.2d 196, 205 (Fla. 1st DCA 2000). While the trial court's discretion is limited by the applicable legal principles, the appellate court will not substitute its judgment for the trial court's express or implied findings of fact which are supported by competent substantial evidence. Id. Given these principles, the trial court did not abuse its discretion.
Here, there is competent substantial evidence to support the trial court's findings that Vasa's current lawyer and the defendants were both operating under the mistaken belief that Gardere Wynne represented Vasa as well as Old PDS. Because Vasa was the CEO and controlled the majority of shares of Old PDS, this was not an unreasonable assumption. The letter limiting Gardere Wynne's representation to Old PDS was not discovered until the deposition. The trial court's conclusion that the disclosure was inadvertent is supported by competent substantial evidence.
Applied and Old PDS contend that even inadvertent disclosure requires disqualification of an attorney who obtains privileged documents, citing General Accident Insurance Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505, 506 (Fla. 4th DCA 1986); Abamar Housing and Development, Inc. v. Lisa Daly Lady Decor, Inc., 698 So.2d 276 (Fla. 3d DCA 1997) ("Abamar I"), rev. denied, 704 So.2d 520 (Fla. 1997); and Abamar Housing and Development, Inc. v. Lisa Daly Lady Decor, Inc., 724 So.2d 572, 573 (Fla. 3d DCA 1998) ("Abamar II"), rev. dismissed, 729 So.2d 918 (Fla.1999). In each of those cases, however, the attorney obtained privileged documents that the attorney otherwise would not have known about. Here, unlike those cases, the documents regarding attorney-client privilege were documents regarding exchanges between Gardere Wynne and Vasa, the current plaintiff.
We do not perceive from any of the cited cases a rule of automatic disqualification any time an attorney inadvertently obtains privileged documents. In fact, Abamar II even cautioned that its holding was not to be construed as creating a rule of automatic disqualification for inadvertent disclosure. 724 So.2d at 574 n. 2. General Accident also does not state a rule of automatic disclosure, and our subsequent opinions have noted the unique nature of the factual circumstances in that case. See, e.g., Alexander, 881 So.2d at 611; Kusch v. Ballard, 645 So.2d 1035, 1035 (Fla. 4th DCA 1994) (Glickstein, J., concurring specially). Instead, in each case, the court must exercise its sound judgment.
Under the facts of this case, the court did not abuse its discretion in denying the motion to disqualify Vasa's counsel. First, the trial court concluded that both sides initially reasonably believed the privilege in Gardere Wynne's file belonged to Vasa. Second, plaintiffs' counsel's retention of the Gardere Wynne file until the trial court decided who had the privilege does not appear to constitute recalcitrance, but protecting his clients' interests where the question of privilege was not a simple one *409 (such as the inadvertent faxing of a letter from an attorney's office to opposing counsel, who knew he was not entitled to receive it). Finally, the trial court could take into account whether the party obtaining privileged material actually obtained an unfair advantage, see, e.g., 5500 N. Corp. v. Willis, 729 So.2d 508 (Fla. 5th DCA 1999) (quashing order disqualifying counsel, inter alia finding defense counsel did not obtain such unfair advantage as to justify removal, where information which motel's attorney learned from plaintiff's investigator revealed nothing inconsistent with plaintiff's complaint). In this case, it could be presumed that Vasa had knowledge of all the documents in the Gardere Wynne files by reason of his being the representative of Old PDS who dealt with the law firm in its representation of Old PDS. Thus, there was not even the suggestion of prejudice.
We reject summarily Old PDS's additional argument that Ravipudi should be disqualified because of conflict of interest in purporting to represent Gardere Wynne's attorneys at their deposition. At the time of the deposition, none of the attorneys knew that Gardere Wynne represented only Old PDS, and there is nothing to show that Gardere Wynne's interests were adverse to Vasa.
For the foregoing reasons, we deny the petition.
STONE and POLEN, JJ., concur.