# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2024-2410
LT Case No. 2017-CP-001731

———————————————

DALE DIXON, ADMINISTRATOR AD
LITEM of THE ESTATE of ALFONSO
T. GLOVER, JR.,

    Appellant,

    v.

MICHAEL J. GREEN, ROSA
WRIGHT, RUTH RANDAL, DELORIS
KIDD, ARLEAN BROOKINS, and
ANDREA TROUTMAN,

    Appellees.

———————————————

Nonfinal appeal from the Circuit Court for Duval County.
Thomas M. Beverly, Judge.

Rosemary Shackelford, Clearwater, and Grayling Emanuel
Brannon, of Law Offices of Grayling E. Brannon, P.A., for
Appellant.

Edward P. Jackson, of Edward P. Jackson, P.A., Jacksonville,
for Appellee, Michael J. Green.

No Appearance for Remaining Appellees.

December 5, 2025

EDWARDS, J.

The primary issue in the underlying case is who will inherit a million dollars from a relative's intestate estate. However, this appeal is about the probate court's order disqualifying attorney Grayling E. Brannon[1] from further participation in the underlying case, based upon a conflict of interest. Attorney Brannon initially represented a client claiming to be the nephew and sole heir of the decedent. However, after being unable to initially prove that relationship, Attorney Brannon began representing other relatives of the decedent and directly fought to defeat the claim of his first client, the nephew. We affirm the trial court's detailed order granting the nephew's motion to disqualify.

*Inheriting From a Rich Uncle*

Uncle Alfonso Glover, Jr. ("the Decedent") died intestate; he never married, had no children, and was predeceased by both his parents and Charles Glover—his brother and only sibling. Charles Glover married Sandra Glover in 1975 and remained wedded to her up until his death. In 1977, Charles Glover fathered a son, Michael Green ("Green") out of wedlock.

In the first phase of the probate case, Attorney Brannon represented Green, asserting that Green is the Decedent's nephew and sole heir to inherit his uncle's intestate estate.[2] Some of the Decedent's cousins, Deloris Kidd, Ruth Randal, Rosa Wright, and Arlean Brookins ("the Cousins"), claimed that Green was not Charles Glover's biological son and therefore not the Decedent's

---

[1] Florida Bar Number 882100 of Jacksonville, Florida

[2] Attorney Brannon also represented Arneka Green, Green's wife, and had her appointed personal representative ("PR") in lieu of Green, who is a convicted felon and thus prohibited by law from serving as PR. *See* § 733.303(1)(a), Fla. Stat. (2017).

nephew.[3]   Thus, the positions of Green and the Cousins were directly and completely adverse to each other, as only one side would be entitled to inherit the Decedent's intestate estate.  As the probate court put it, the battle lines were thus drawn: Green vs. the Cousins.  Attorney Brannon changed sides in the same case by first representing and then opposing Green's claim.

*First Phase of Probate Litigation*

Because Green had been born out of wedlock and Charles Glover never formally acknowledged Green as his son, proving that Green was the Decedent's nephew was challenging.  Attorney Brannon sought an order from the probate court to designate Green as an heir and to exhume the body of Charles Glover in order to obtain DNA samples.  Glover's widow and the Cousins opposed exhumation.  The probate court denied the motion, observing that no order would be needed if the widow later agreed to exhumation.  Attorney Brannon took an appeal of that order to the First District Court of Appeal, where it was per curiam affirmed without a written opinion.[4]

*Later Phases of Probate Litigation*

Later in this same probate case, Attorney Brannon represented one of the Decedent's second cousins, James Glover, and another cousin, Andrea Troutman.  Meanwhile, Green hired new counsel, Attorney Jackson, who convinced Glover's widow to permit the exhumation of her late husband's body.  The DNA test results established a 99.99% probability that Green was Charles Glover's son and thus was the Decedent's nephew and sole heir.

Attorney Jackson, on behalf of Green, filed a motion for summary judgment asserting that he should be declared the

---

[3] The Cousins were initially represented only by Attorney Tassone.

[4] *Green v. Kidd*, 280 So. 3d 463 (Fla. 1st DCA 2019).

Decedent's sole heir and that the claims of the other potential heirs should be denied.

*Summary Judgment Hearing*

The court held a hearing on Green's summary judgment motion. Attorney Jackson on behalf of Green argued that the recent DNA results established that Charles Glover was Green's father, making Green the sole heir of the Decedent's estate.

Although Attorney Tassone filed the sole written response in opposition to Green's summary judgment motion, he deferred to Attorney Brannon to orally argue against Green's position during the hearing. Attorney Brannon began his presentation with something of an understatement, "[a]nd it's kind of awkward because I was on the other side back during that period of time." This was an obvious reference to the fact that Attorney Brannon originally asserted in this same case that Green was the Decedent's nephew and sole beneficiary, a position Attorney Brannon now opposed. Attorney Brannon then proceeded in that hearing to advocate against Green's entitlement to inherit from the Decedent's estate.

The court orally granted the motion for summary judgment and found Green to be the Decedent's sole beneficiary.[5]

*Attorney Brannon's Motion for Rehearing*

Before a written order granting summary judgment was prepared, Attorney Brannon filed a motion for rehearing on behalf of Appellant, Dale Dixon, Administrator Ad Litem of the Estate of Alfonso Green. Attorney Brannon's rehearing motion argued that Green was barred for multiple reasons from asserting his claim to be the sole heir.

*Motion to Disqualify Attorney Brannon*

---

[5] Neither side included a written order granting summary judgment in its appendix.

In response to Attorney Brannon's motion for rehearing, Green moved to disqualify Attorney Brannon from representing any party opposed to him in the estate contest. The motion to disqualify stated that Attorney Brannon represented Michael and Arneka Green initially, but then changed sides during the estate litigation by representing opposing clients, thereby creating a conflict of interest warranting disqualification. Attorney Brannon filed a written response asserting that Green lacked standing to challenge Attorney Brannon's representation of others in this probate matter. In that response, Attorney Brannon also denied that an attorney-client relationship ever existed between him and Green. Attorney Brannon argued that he was not precluded from representing Green's opponents under The Florida Bar's conflict of interest rules, a position Appellant maintains on appeal.

*Hearing on Motion to Disqualify and Motion for Rehearing*

A hearing was held on Green's motion to disqualify and Attorney Brannon's motion for rehearing. Green argued that Attorney Brannon's representation of the Administrator Ad Litem and various cousins was adverse to Green's interests and, based on the conflict, Attorney Brannon should be disqualified. Green further asserted that Attorney Brannon's initial representation of him and his wife was based upon the claim of Green being the Decedent's nephew and sole heir, and after switching sides, Attorney Brannon was now arguing directly in opposition to that premise without the Greens' consent.

Attorney Brannon argued that Green lacked standing, claiming Brannon never had a direct attorney-client relationship with Green. Attorney Brannon asserted that his withdrawal would cause irreparable damage to his current clients who opposed Green's status as sole heir.

*The Disqualification Order*

The probate court granted Green's motion to disqualify Attorney Brannon. In its detailed order, now being appealed, the probate court found that Arneka Green was still a party to the case because she had never been discharged as the PR, and Attorney Brannon never terminated his appearance for her. The court

considered Attorney Brannon's representation of Ms. Green, additional evidence of Attorney Brannon's coextensive representation of Green and his wife, and analyzed both under the conflict of interest rules found in the Rules Regulating The Florida Bar and relevant case law. The probate court found there was an adverse interest between the Greens and the Cousins and entered a written order granting Green's motion to disqualify Attorney Brannon from representing those adverse to Green. A timely appeal was taken by Appellant.

*Issues On Appeal*

### 1. *Standing to Seek Attorney Brannon's Disqualification*

Appellant asserts that Michael Green lacked standing to seek Attorney Brannon's disqualification. "To have standing, a would-be litigant must show 'a direct and articulable interest in the controversy, which will be affected by the outcome of the litigation.'" *Bivins v. Douglas*, 335 So. 3d 1214, 1218 (Fla. 3d DCA 2021) (quoting *Cruz v. Cmty. Bank & Tr. of Fla.*, 277 So. 3d 1095, 1097 (Fla. 5th DCA 2019)). Whether a party has standing is reviewed de novo. *See Fox v. Pro. Wrecker Operators of Fla., Inc.*, 801 So. 2d 175, 178 (Fla. 5th DCA 2001) (citing *Putnam Cnty. Env't Council, Inc. v. Bd. of Cnty. Comm'rs of Putnam Cnty.*, 757 So. 2d 590, 594 (Fla. 5th DCA 2000)). Appellant claims Green is not an "interested person," citing to section 731.201(23), Florida Statutes (2024), which defines an interested person as "any person who may reasonably be expected to be affected by the outcome of the particular proceeding . . . ." Given Green's claim and the probate court's ruling that he is the sole heir of the Decedent's estate, he certainly qualifies as an "interested person." It is difficult to conceive of anybody having a stronger claim of standing than a former client seeking to prevent his attorney from representing other clients, whose interests are directly adverse to his, in the same proceeding.

### 2. *Was Disqualification an Abuse of Discretion?*

"The standard of review for orders entered on motions to disqualify counsel is that of an abuse of discretion." *Kemp Invs. N., LLC v. Englert*, 314 So. 3d 734, 736 (Fla. 5th DCA 2021) (quoting

*Applied Digit. Sols., Inc. v. Vasa*, 941 So. 2d 404, 408 (Fla. 4th DCA 2006) (citation omitted)).

Appellant argues that there was no evidence to support any finding that Attorney Brannon represented Green. To say that Appellant is badly mistaken is charitable. The following evidence was adduced below. First, during the initial hearing in the estate contest, Attorney Brannon announced on the record that he represented *both* Michael and Arneka Green. Second, during the first phase of the probate litigation, Attorney Brannon billed the Greens for services rendered on different dates including: (1) "an office consultation with clients," (2) "advise clients" that he spoke with opposing counsel, (3) "phone conference with clients," and (4) "office conference with clients." The probate court found Brannon's use of "*clients*," plural, in those bills, indicated that "Attorney Brannon considered both Arneka Green and Michael Green to be his clients." Third, Attorney Brannon's cover letter forwarding the invoice for services rendered was addressed *solely* to Michael Green. Fourth, Attorney Brannon acknowledged during the summary judgment hearing that he was in an awkward position as he previously was on the other side.

### *Legal Basis of Disqualification: Conflict of Interest*

The probate court here carefully considered the two-part test established in *State Farm Mutual Automobile Insurance Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991), before it disqualified Attorney Brannon. *K.A.W.* requires that a party seeking to disqualify opposing counsel based on a conflict of interest must demonstrate that:

> (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and

> (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client.

7

*Kaplan v. Divosta Homes, L.P.*, 20 So. 3d 459, 462 (Fla. 2d DCA 2009) (quoting *K.A.W.*, 575 So. 2d at 633). Here, the probate court found that the first factor, the attorney-client relationship, had been established. Its decision is supported by competent substantial evidence. The probate court concluded that the second factor, subsequent representation of an interest adverse to the former client in the same or similar proceeding, had likewise been established as it all occurred in the very same estate contest. That finding is likewise supported by competent substantial evidence. It is difficult to imagine more completely adverse interests being represented by a single attorney, in a single case, than to begin advocating for Green being the sole heir only to change sides, arguing against Green inheriting a single penny. As the probate court aptly noted in the order of disqualification, "the battle lines are drawn: Michael Green vs. the Cousins" because "[t]he primary dispute in this adversary proceeding has always been the identity of the [D]ecedent's beneficiaries." Attorney Brannon over time represented first one side and then the other in the same case.

The Rules Regulating The Florida Bar prohibit such representation of adverse interests. To the extent that Appellant argues that Attorney Brannon quit representing Arneka Green and Michael Green before switching sides and clients, Rule of Professional Conduct 4-1.9 provides:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent[.]

R. Regulating Fla. Bar 4-1.9(a) (2024); *see also* R. Regulating Fla. Bar 4-1.9 cmt. ("The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.").

8

Similarly, Rule of Professional Conduct 4-1.7, Conflict of Interest; Current Clients, must be considered. The disqualification order noted that Attorney Brannon never formally terminated his representation of Arneka Green, nor did Brannon have the court enter an order satisfactorily discharging her as the PR. Thus, the probate court concluded that she was still a party. As such, this rule governs because Attorney Brannon represented some of the Cousins and the Administrator Ad Litem against the Greens. That rule provides, in pertinent part:

> (a) Representing Adverse Interests. Except as provided in subdivision (b), a lawyer must not represent a client if:
>
> (1) the representation of 1 client will be directly adverse to another client; or
>
> (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

R. Regulating Fla. Bar 4-1.7(a) (2024).

The adverse nature of the sequential representations is clear. There is no argument that the clients, Michael or Arneka Green, gave informed consent for Brannon to change sides and oppose them. A conflict of interest existed sufficient to disqualify Attorney Brannon. Accordingly, we affirm the disqualification order.[6]

*Order Striking All Pleadings Filed by Brannon Against Green*

In addition to disqualifying Attorney Brannon from further participation, the probate court's order also struck all "pleadings, motions, and other matters filed by Grayling Brannon in opposition to Michael Green's interest in this case." Appellant

---

[6] Appellant raised several other arguments in support of its position, which we considered but found do not merit discussion.

9

asserts that this was an abuse of discretion. However, Appellant provides no case law in support of his position and offers only conclusory statements that striking Attorney Brannon-filed pleadings adverse to Green during the past five years would create a "devastating burden" on his newer clients. Conclusory arguments are insufficient for purposes of appeal and should be deemed waived. *See State v. Town of Sweetwater*, 112 So. 2d 852, 854 (Fla. 1959); *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983). Thus, Appellant waived this issue.

*Referral to The Florida Bar*

Canon 3D of Florida's Code of Judicial Conduct states, in part:

> (2) A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.

Fla. Code Jud. Conduct, Canon 3D.

Based on the probate court's finding that Attorney Brannon changed sides, "has abandoned his client and taken up the cause of his client's adversaries, the Cousins," and our review of the entire record, we conclude that there is a substantial likelihood that Attorney Brannon violated one or more Florida Bar rules regarding conflicts of interest. This Court finds that the action appropriate to take here is to make a referral of Attorney Grayling Brannon to The Florida Bar.

Accordingly, we order our Clerk of the Court to forward a copy of: this opinion, the probate court's disqualification order, and the parties' briefs to The Florida Bar for its consideration and such action as it deems appropriate.

AFFIRMED.

LAMBERT, J., concurs.
KILBANE, J., concurs in result only.

10

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____